MARK W. WILLIS'S CASE.

Suffolk.    March 27, 1923. — May 25, 1923.

Present: RUGG, C.J., BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act,* Expenses in " unusual cases." *Words,* " Unusual."

In proceedings under the workmen's compensation act, it appeared that an employee was injured on May 17, was treated for two days at a hospital and thereafter for over four months was treated at a physician's office except on two days when one finger and a portion of another were amputated; that the injury was a very serious one complicated by unusual conditions, including degeneration of the skin, laceration of the tissues, necrosis of the bone and tissues, and hemorrhage; that it " necessitated the amputation of the first and two thirds of the second phalange of the middle finger and the first, second and two thirds of the phalange of the fourth finger of the employee's right hand and the employee as a result of the injury has lost ability to grip with his right hand, has no movement in the first phalange of the little finger and no movement in the first and second phalange of the index finger." *Held,* that the case was " unusual " and, under G. L. c. 152, § 30, a decree was warranted directing payment for physicians' services and hospital expenses for more than ten weeks following the injury.

An employee, injured within the provisions of the workmen's compensation act, was treated for an injury to his hand during five weeks after the injury, when he returned to work. The palm of his left hand was " cut and lacerated and gravel and dirt were ground into it." The wound was infected and blood poisoning set in. There were thirty-one visits by a physician, all but two at his office, and these two were made at the employee's house in the fourth week because he had failed to come to the office. The treatment after the first two weeks was that of dressing the wound and was

sometimes done by the physician's assistant. The case did not require the services of a specialist. *Held*, that the case was not " unusual " within the meaning of G. L. c. 152, § 30.

A record, certified to the Superior Court under the provisions of the workmen's compensation act, showed that an employee broke his leg on June 19; that in the following March, " on account of his knee being weak, he fell down and fractured the old fracture," according to his testimony; that from March 31 to May 7 he was a patient at a hospital. The record failed to disclose how this second fracture occurred, beyond the above statement of the employee. There was no medical testimony. The Industrial Accident Board ruled and found that the case was " unusual " within the meaning of G. L. c. 152, § 30, and that a bill of the hospital should be paid, and the Superior Court entered a decree to that effect, from which the insurer appealed. *Held*, that, although the record did not present an " unusual " case under G. L. c. 152, § 30, which would warrant the decree, an injustice might be done if, on a record presenting the case so inadequately, the case finally was disposed of; therefore the decree was reversed and the case was ordered to be recommitted to the Industrial Accident Board for further hearing on the question of the seriousness of the injury and its relation to the original accident.

CERTIFICATIONS to the Superior Court under the provisions of the workmen's compensation act of three decisions of the Industrial Accident Board. The first decision determined that the case of an injury received by Paul Rys, while employed by Loose Wiles Biscuit Company, was an " unusual " case, and allowed certain charges for physicians' and surgeons' services and hospital bills in connection therewith. The second decision determined that the case of an injury received by Horace Will White, while employed by William H. McGaw, was an " unusual " case, and that a charge for physicians' services should be allowed. The third decision determined that an injury suffered by Mark W. Willis, following a previous injury received in the employ of H. P. Hood and Sons, Inc., was an unusual case, and that a hospital bill in connection therewith should be paid.

Material facts shown by the records certified are described in the opinion.

In the Superior Court, decrees were entered adopting the findings and rulings of the Industrial Accident Board, that in the first case being entered by order of *Sanderson*, J., that in the second case by order of *Wait*, J., and that in the third case by order of *Keating*, J. The insurer appealed from each decree.

*G. Gleason* argued for the insurer in the first and second cases and, for the insurer in the third case, submitted a brief.

No counsel appeared for the employee in either case.

DeCOURCY, J. The workmen's compensation act in its original form (St. 1911, c. 751, Part II) provided: " Section 4. No compensation shall be paid under this act for any injury which does not incapacitate the employee for a period of at least two weeks from earning full wages, but if incapacity extends beyond the period of two weeks, compensation shall begin on the fifteenth day after the injury. Section 5. During the first two weeks after the injury, the association shall furnish reasonable medical and hospital services, and medicines when they are needed." In the report of The Commission on Compensation for Industrial Accidents, stating the reasons underlying these provisions, it was said (page 49): " This waiting period was set at two weeks, as it was thought unwise to burden industry with the cost of many slight injuries. Moreover, the requirement of medical attendance will meet the greatest need of the injured man during this period. . . . " The Industrial Accident Board in their First Annual Report to the Legislature dated January 31, 1914, (pages 50, 51,) called attention to the provisions made for the medical and waiting period in compensation acts of other States; and they requested that " the Legislature give the Board the power to require the payment of bills for medical and surgical treatment, medicine, medical and surgical supplies, crutches and apparatus when necessary, beyond the first two weeks after the injury, in unusual cases where the injury is so serious as to require and warrant such additional medical treatment." By St. 1914, c. 708, said § 5 was amended: the portion relevant to the cases before us being substantially in the language now appearing in G. L. c. 152, § 30, — which reads as follows: " During the first two weeks after the injury, and, if the employee is not immediately incapacitated thereby from earning full wages, then from the time of such incapacity, and in unusual cases, in the discretion of the department, for a longer period, the insurer shall furnish adequate and reasonable medical and hospital services, and medicines if needed."

Two of the cases before us are for medical services, and the third is for hospital treatment furnished to an injured employee.  In the first two admittedly the injury arose out of and in the course of the injured man's employment.  The Industrial Accident Board found that each of them was " an unusual case " within the meaning of the statute, and that the insurer was liable for a longer period than the first two weeks of incapacity.

Paul Rys was injured on May 17, 1921, and was treated on that day and the next at the Haymarket Relief Station. From May 19 to September 28 he was treated by Dr. Fiderkiewicz, and always at the doctor's office, except on May 31 and June 1 when one finger and portion of another were amputated.  The board found that " the injury in this case was a very serious one complicated by unusual conditions, including degeneration of the skin, laceration of the tissues, necrosis of the bone and tissues, and hemorrhage. The injury necessitated the amputation of the first and two thirds of the second phalange of the middle finger and the first, second and two thirds of the third phalange of the fourth finger of the employee's right hand and the employee as a result of the injury has lost ability to grip with his right hand, has no movement in the first phalange of the little finger and no movement in the first and second phalange of the index finger."  The insurer contends that this was not an " unusual case " under the statute, and that the board was not warranted in holding it liable for the medical services rendered more than two weeks after the injury.

The employee Horace Will White received an injury to his hand on October 6, 1921, and was treated by Dr. H. E. Fernald for five weeks, when he was able to return to work. The palm of his left hand was " cut and lacerated and gravel and dirt were ground into it."  The wound was infected, and blood poisoning set in.  There were thirty-one visits, all but two at the doctor's office: and these two were made at the employee's house on November 1 and 2 because he had failed to come to the office.  The treatment after the first two weeks was that of dressing the wound, and was sometimes done by the physician's assistant.  The case did

not require the services of a specialist. The insurer contends that the finding of the board, that this was " an unusual case " was unwarranted: and that it is liable only for the medical services rendered during the two weeks subsequent to the injury.

The employee Mark W. Willis broke his right leg on June 19, 1921. While still incapacitated and receiving compensation, " in March, on account of his knee being weak, he fell down and fractured the old fracture," according to his testimony. He was a patient at the Chelsea Memorial Hospital from March 31, to May 7, 1922; and the liability of the insurer to pay the hospital bill for this period is raised by this appeal. The decision of the board was : " The board rule and find that this is an unusual case in which the insurer should be charged with the payment of the hospital bill in question, amounting to $136, the recurrence of the fracture, with the consequent necessity of additional and costly surgical and hospital treatment following a disability period of almost a year, being some of the features which lead us to this conclusion." The record fails to disclose how this second fracture occurred, — beyond the above statement of the employee that " he fell down." It is not shown to be causally connected with the original injury; there being merely a statement that the " Claimant . . . now claims that the second break in his leg came as a result of his first injury because it left his knee weak." There was no medical testimony. See *Hartnett* v. *Tripp*, 231 Mass. 382, and cases cited; *Clayton* v. *Holyoke Street Railway*, 236 Mass. 359.

The difficulty of defining in advance what constitutes an unusual as distinguished from the usual or ordinary case, is inherent in the word itself, when used in connection with a subject so comprehensive and varied as human injuries. The unusualness has reference primarily to the nature of the injury itself. The Legislature apparently adopted the word from the above quoted request of the board in their first annual report. As was said in *Huxen's Case*, 226 Mass. 292, 295: " It is manifest that the Legislature did not intend to impose all expenses of medical attendance upon the insurer. The obligation to provide such attendance as an

absolute duty is confined to two weeks after the injury. It is manifest that in the aggregate there must be many cases where medical attendance maybe required for a longer period. It is not in an ordinary case requiring longer medical attendance that the discretion of the board may be exercised to charge this attendance to the expense of the insurer. It is only in ' unusual cases ' that they may do so. There would be grave doubt whether a case where the employee is able to go from his home in Cambridge to an office in Boston could be so unusual as to be within the purview of the act." See also *Bolton's Case*, 243 Mass. 230. Among the " unusual " cases would ordinarily be included, for example, those requiring major operations, spinal injuries calling for expensive special apparatus, and serious injuries to the eye or brain demanding the services of specialists. It is equally clear that the statute is not applicable to the common minor injury, calling for ordinary medical treatment, — even though treatment for more than two weeks is necessary. Cases close to the line on either side must be determined by their particular facts.

In the case of Paul Rys, the nature of his injury, complicated as it was by the serious condition of the skin, tissues and bone, was such that we cannot say the finding of the board was unwarranted. This decree is affirmed.

In the case of Horace Will White we are of opinion that the board was not warranted in finding that it was "unusual" within the meaning of the statute. His injury was comparatively simple, and after the first surgical treatment it called only for dressings to prevent blood poisoning. The employee was able to go to the doctor's office throughout his incapacity, which lasted only five weeks. The decree in this case must be reversed, and a decree entered ordering the insurer to pay the medical expenses for the first two weeks after the injury.

In the case of Mark W. Willis, as above pointed out, the meagre record fails to disclose how the accident happened, or to show any causal connection between the original injury and the second fracture. The hospital bill in question was incurred more than nine months after the original accident.

The mere " recurrence of the fracture " is not enough to show that this arose out of Willis's employment, as did the first fracture. The absence of medical witnesses and the failure to present essential facts, may well be due to the fact that neither the employee nor the hospital was represented by counsel at the hearing before the board. It is apparent that the claim was not adequately presented and, although the present record fails to disclose facts warranting the finding that this was an " unusual " case, an injustice may be done if we now finally dispose of it. In the special circumstances we think the decree should be reversed, and the case recommitted to the Industrial Accident Board for further hearing on the question of the seriousness of the injury, and its relation to the original accident.

*Ordered accordingly.*