## Vasilios Panagotopulos's Case.

Suffolk.   April 10, 1931. — September 21, 1931.

Present: Rugg, C.J., Crosby, Wait, Sanderson, & Field, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Findings by Industrial Accident Board.  *Proximate Cause.*  *Evidence*, Presumptions and burden of proof.

One employed as a "treer" by a shoe manufacturer contracted industrial dermatitis in July, 1929, due to the irritation and breaking of his skin in the performance of his work, and inflammation and poisoning caused by his use of ammonia and liquid dye polish, and his employment by that manufacturer then ceased. Two weeks later he became employed by another shoe manufacturer for two weeks and then was out of employment until the following January 20, 1930, when he entered the employ of a third shoe manufacturer, and later of a fourth, until February 20, 1930. He then filed a claim under the workmen's

compensation act against the first employer, and, after hearings, the Industrial Accident Board, in a decision which was not certified to the Superior Court, affirmed and adopted findings by a single member that the employee in July, 1929, received injuries under the act resulting in a condition which became disabling on August 6, "that the condition which incapacitated the employee was not materially affected by his subsequent employment elsewhere, and that all of his incapacity for work subsequent to August 6 . . . is due to the injury received while in the employment of the" first employer; and awarded compensation to January 20, 1930, reserving the employee's further rights. Later the employee made claim for further compensation against the insurer of the first employer, at a hearing of which before a member of the board in September, 1930, there was evidence warranting a finding that the dermatitis from which he became afflicted in July, 1929, while employed by the first employer, was not fully cured on January 20, 1930, and that the employee on that date had such susceptibility to dermatitis that there was a high degree of probability, amounting almost, if not quite, to certainty, that further exposure to poisonous liquids would result in an outbreak of the disease; that the employee was advised by his physician, when he went to work on January 20, 1930, for the third employer, "not to get into this liquid again"; and that the further outbreaks followed and were caused by exposures to such liquids thereafter. The employee described the first outbreak after January 20 as a "recurrence of the condition of his hands." The board, hearing the case in review on November 6, 1930, awarded compensation to be paid by the insurer of the first employer for total incapacity from February 20 to November 6, and for partial incapacity thereafter. The insurer appealed. *Held,* that

(1) The industrial dermatitis was a "personal injury" within the provisions of the workmen's compensation act;

(2) The decision of the Industrial Accident Board on the first application of the employee, that he sustained an injury on July, 1929, under the provisions of the act, was binding upon the insurer; but the board's finding in that decision that all of the employee's "incapacity for work subsequent to August 6 . . . is due to the injury received while in the employment of the" first employer, did not apply to incapacity after January 20, 1930, and did not preclude an examination into the cause of the later incapacity;

(3) The burden rested upon the employee of showing by a preponderance of evidence that his total incapacity between February 20 and November 6 resulted from his original injury and not from an intervening cause;

(4) The employee's description of the first outbreak of the dermatitis after January 20, 1930, was not sufficient to warrant a finding that there was a causal relation between that outbreak and the original injury;

(5) The further exposure of the employee to the poisonous liquids after the termination of his employment by the first employer was not an incident of the original injury or of the outbreak resulting from that injury;

(6) It could not be found properly that the employee's exposing himself to poisonous liquids in the course of his employment after January 20, 1930, was not such a voluntary act on his part as to break the line of causation between his original injury, arising out of and in the course of a previous employment, and his incapacity for work after February 20, 1930;

(7) It was not material that the intervening voluntary act did not amount to "serious and wilful misconduct";

(8) The employee had not sustained the burden of proving that his total incapacity between February 20 and November 6, 1930, resulted from the injury received while in the employ of the first employer;

(9) Whether on the evidence the employee's susceptibility to outbreaks after November 6, 1930, was due to a constitutional predisposition to poisoning by exposure to the liquids in question, or to the outbreak of the disease caused by exposure in the course of his employment by the first employer, or to earlier or later outbreaks, lay in the realm of conjecture;

(10) The employee had not sustained the burden upon him of proving the cause of the partial incapacity after November 6, 1930;

(11) The decree was reversed both as to compensation for total and for partial incapacity after January 20, 1930.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board upon a claim by Vasilios Panagotopulos, heard by a single member of the board on September 22, 1930, for further compensation in addition to compensation to January 20, 1930, previously awarded by the board, the injuries being alleged to have arisen out of and in the course of his employment by United Novelty Shoe Co., Inc.

Evidence and facts shown by the record of proceedings before the Industrial Accident Board are described in the opinion. The case was heard in the Superior Court by *Whiting*, J., by whose order there was entered a final decree, described in the opinion, awarding further compensation. The insurer appealed.

*G. F. Garrity & H. B. White*, for the insurer, submitted a brief.

*P. H. Ready*, for the claimant.

FIELD, J. This is a workmen's compensation case. G. L. c. 152. The employee for some time was employed as a "treer" by the United Novelty Shoe Co., Inc. — Maryland

Casualty Company, insurer — but left such employment about July 29, 1929. He was out of work two weeks, then worked for the Merrimack Shoe Manufacturing Company two weeks, was again out of work until January 20, 1930, then worked for the Model Shoe Company, Inc. two weeks, and afterward for the Jackson Shoe Company until the latter part of February, 1930. He claims compensation for "incapacity for work" after February 20, 1930, resulting, as he contends, from a "personal injury arising out of and in the course of his employment" by the United Novelty Shoe Company. G. L. c. 152, §§ 26, 34, 35.

After hearings on February 17, and March 3, 1930, a single member of the Industrial Accident Board found "that this employee received a personal injury which arose out of and in the course of his employment with the United Novelty Shoe Company, due to the irritation and breaking of his skin in the performance of his work as a treer, and inflammation and poisoning caused by the employee's use of ammonia and liquid dye polish . . . that the employee's injury was received on or about July 25, 1929, . . . that this condition became disabling on August 6, 1929, about one week after the employee had left his employment with the United Novelty Shoe Company," "that the condition which incapacitated the employee was not materially affected by his subsequent employment elsewhere, and that all of his incapacity for work subsequent to August 6, 1929, is due to the injury received while in the employment of the said Shoe Company," awarded compensation against the Maryland Casualty Company, for total incapacity for two weeks beginning August 6, 1929, partial incapacity thereafter until August 30, 1929, and total incapacity from August 30, 1929, to January 20, 1930, and reserved the employee's further rights. The reviewing board adopted the findings and decision of the single member. This decision was not presented to the Superior Court.

After a hearing on November 6, 1930, as to the employee's further rights, the reviewing board, reversing the decision of the single member, found "that the condition which incapacitated the employee subsequent to January 20, 1930, was

due to the injury of July 25, 1929, from which the employee had not recovered," that he had been totally incapacitated for work from February 20, 1930, to the date of this hearing, was "incapacitated for return to his former work," and was entitled to partial compensation from November 6, 1930, based upon the difference between his earning capacity in his former employment and "in the general labor market," and accordingly awarded compensation against the Maryland Casualty Company. The Superior Court entered a decree in accordance with this decision and the insurer appealed.

1. The award of compensation for total incapacity for work from February 20, 1930, until November 6, 1930, as against this insurer was not justified by the evidence.

The evidence warranted a finding that from February 20, 1930, to November 6, 1930, the employee suffered from industrial dermatitis in his hands to such an extent that he was totally incapacitated for work during that period. It could have been found that industrial dermatitis, though termed a disease, is traceable to a "personal injury" within the meaning of the workmen's compensation law (§ 26), and is not a "simple disease resulting from [the] employment." See *Sullivan's Case*, 265 Mass. 497, 499, and cases cited. Indeed the insurer makes no contention to the contrary. Poisoning induced by the necessary exposure of an employment falls within a recognized class of personal injuries. *Maggelet's Case*, 228 Mass. 57, 61. *Pimental's Case*, 235 Mass. 598, 602. See also *Hurle's Case*, 217 Mass. 223; *Bergeron's Case*, 243 Mass. 366; and *Carmossino's Case*, 268 Mass. 35.

The finding of the board in its first decision which was not presented to the Superior Court, that the employee was poisoned by exposure to liquids used by him in his work as a "treer" when employed by the United Novelty Shoe company, and, consequently, that he received a personal injury arising out of that employment, is binding upon the insurer. *Hurley's Case*, 235 Mass. 387. *Brode's Case*, 251 Mass. 414, 417. *McCarthy's Case*, 253 Mass. 553. *O'Neil's Case*, 262 Mass. 266. However, the finding in this

decision that "all of his incapacity for work subsequent to August 6, 1929, is due to the injury received while in the employment of the said Shoe Company," did not apply to his incapacity after January 20, 1930 — as to which the employee's rights were reserved — and does not preclude us from examining into the cause of such later incapacity. See *Hunnewell's Case*, 220 Mass. 351; *Weir's Case*, 252 Mass. 236; and *Hanson's Case*, 264 Mass. 300.

The burden rested upon the employee of showing by a preponderance of evidence that his total incapacity between February 20, 1930, and November 6, 1930, resulted from his original injury and not from an independent intervening cause. *Sponatski's Case*, 220 Mass. 526, 528, 531–532. *Upham's Case*, 245 Mass. 31. This burden has not been sustained. Though the evidence warranted a finding that the employee's total incapacity after February 20, 1930, resulted from an outbreak or outbreaks of dermatitis after January 20, 1930, it did not warrant a finding that such outbreak or outbreaks resulted from the original injury.

The employee testified that after January 20, 1930, when employed by the Model Shoe company and later by the Jackson Shoe Company, he was exposed to poisonous liquids and that, in each instance, his hands broke out again. He stated that the "using of the liquid at his work in the Model Shoe company started up the condition again," and that "it was the work he did there which caused his hands to break out again." In his testimony at the original hearing he stated that he "left this work on account of a recurrence of the condition of his hands." He testified that when he first went to work for the Model Shoe company on January 20, 1930, "his hands were in fair condition although not entirely well. The soreness had not entirely gone." A physician who had treated the employee, called by him as a witness, testified that on January 20, 1930, the condition of the plaintiff's hands was "fairly clear," that on that date "his hands were in such a condition that if he kept away from irritants [they] . . . would have come along all right." He testified, however, that "if the man went back and did

that shoe work it would start the condition again," and that he advised the employee, "When he went back to the Model Shoe company on January 20 . . . not to get into this liquid again." A physician called by the insurer testified that if the employee's hands "were fairly cleared up after January 20, 1930, [the] witness would advise against his going back and using the irritant which was the cause of the condition. If he did use the same irritant [the] witness would expect to have the condition break out again . . . No matter when this man goes back to work and comes in contact with such irritant his hands will break out again."

The employee's description of the first outbreak of dermatitis after January 20, 1930, as a "recurrence of the condition of his hands" is not sufficient to warrant a finding of a causal relation between that outbreak and the original injury. This testimony is consistent with an outbreak similar to an earlier one, but caused by a new injury. *Willis's Case*, 245 Mass. 244, 248, 249–250. So also to "start the condition again" is consistent with a new injury.

The evidence warranted findings that the outbreak found by the first decision of the board to have resulted from the original injury was not fully cured on January 20, 1930, and that the employee on that date had such susceptibility to dermatitis that there was a high degree of probability, amounting almost, if not quite, to certainty, that further exposure to poisonous liquids would result in an outbreak of the disease. According to the employee's uncontradicted testimony, there were such further exposures and outbreaks.

Even if the employee is not bound by his statement that the first outbreak after January 20, 1930, was caused by his work for the Model Shoe company (see *Whiteacre* v. *Boston Elevated Railway*, 241 Mass. 163, 165–166), the evidence warranted such a finding. So, also, there was evidence that exposure in the course of his employment by the Jackson Shoe Company caused an outbreak of the disease. No question is before us as to the responsibility of the insurers of these subsequent employers for the employee's incapacity for work, but it is to be noted that each of these employers took the employee at the time it employed him in his "then

condition" (*Fabrizio's Case*, 274 Mass. 352, 354), even to the extent of responsibility for incapacity resulting from acceleration by injury of a preëxisting disease. *Madden's Case*, 222 Mass. 487, 495–496. *Colantueno's Case*, 275 Mass. 1, 3–4, and cases cited.

There is nothing in the case to indicate that the employee would have been totally incapacitated for work between February 20, 1930, and November 6, 1930, or, indeed, that he would not have been fully cured of the original outbreak of the disease before February 20, 1930, if he had not been exposed to poisonous liquids after January 20, 1930. On the other hand, a finding was not warranted that the outbreaks after January 20, 1930, would not have occurred but for the employee's condition on that date due to his original injury, in which respect the case differs from *Gaglione's Case*, 241 Mass. 42, and *Geary's Case*, 253 Mass. 114, relied on by the employee. Neither of these propositions, however, would be conclusive against the employee if it appeared that his total incapacity for work resulted from the combined effect of the original injury and later injury or injuries, (see *Rooney* v. *New York, New Haven & Hartford Railroad*, 173 Mass. 222, 223–224), and that no later injury was an independent intervening cause of such incapacity. Such proof has not been made.

Even if it is assumed in favor of the employee that the fact that he had an outbreak of dermatitis in the course of his employment by the United Novelty Shoe company, or the fact that this outbreak was not fully cured on January 20, 1930, rendered him more susceptible to an outbreak upon further exposure to poisonous liquids than he otherwise would have been, it does not appear that his further exposure to poisonous liquids was not so distinct from his original injury as to constitute an intervening cause of incapacity. See *Willis's Case*, 245 Mass. 244. Such further exposure was not an incident of the original injury or of the resulting outbreak. Hence *Hartnett* v. *Tripp*, 231 Mass. 382, *Wilder* v. *General Motorcycle Sales Co.* 232 Mass. 305, and *Clayton* v. *Holyoke Street Railway*, 236 Mass. 359, are distinguishable. This is not a case of a return of an em-

ployee to ordinary employment. Compare *Gaglione's Case*, 241 Mass. 42, and *Geary's Case*, 253 Mass. 114. The employee's own medical witness testified without contradiction that there was a high degree of probability that further exposure to poisonous liquids would result in another outbreak and there is no evidence that the employee did not have full knowledge of this fact. On the contrary, this medical witness testified that he advised the employee "not to get into this liquid again." In this state of the evidence as to the employee's knowledge of the probable physical effect of further exposure, despite the pressure upon him of desire or need for the highest wages which he could earn, it could not be found that his exposing himself to poisonous liquids in the course of his employment after January 20, 1930, was not such a voluntary act on his part as to break the line of causation between his original injury, arising out of and in the course of a previous employment, and his incapacity for work after February 20, 1930. *Raymond* v. *Haverhill*, 168 Mass. 382, 383–384. *Daniels* v. *New York, New Haven & Hartford Railroad*, 183 Mass. 393, 399. *Snow* v. *New York, New Haven & Hartford Railroad*, 185 Mass. 321. Cases dealing with the breaking by an intervening agency of the causal connection between negligence and physical harm are in point in workmen's compensation cases. *Sponatski's Case*, 220 Mass. 526, 531–532. It is not material that the intervening voluntary act did not amount to "serious and wilful misconduct." G. L. c. 152, § 27.

2. The award of compensation for partial incapacity for work after November 6, 1930, as against this insurer was not justified by the evidence.

There was no evidence that the outbreak of dermatitis from which the employee was suffering immediately before November 6, 1930, was fully cured on that date. So far as the employee's partial incapacity for work thereafter resulted from this outbreak, he is in no better position as against this insurer with respect to compensation for partial incapacity after November 6, 1930, than with respect to compensation for total incapacity for the period between

February 20, 1930, and November 6, 1930. So far as such partial incapacity resulted from the employee's susceptibility to outbreaks upon further exposure, the evidence did not establish a causal relation between such susceptibility and the original injury. Whether on the evidence the employee's susceptibility to outbreaks after November 6, 1930, was due to a constitutional predisposition to poisoning by exposure to the liquids in question, to the outbreak of the disease caused by exposure in the course of his employment by the United Novelty Shoe company, or to earlier or later outbreaks, lies in the realm of conjecture. *Green's Case*, 266 Mass. 355, 357. There was no testimony, medical or other, that the employee's injury in July, 1929, increased his susceptibility to outbreaks upon exposure after November 6, 1930. See *Jones* v. *New Brynmally Colliery Co. Ltd.* 106 L. T. (N. S.) 524; 5 B. W. C. C. 375; *Garnant Anthracite Collieries, Ltd.* v. *Rees*, [1912] 3 K. B. 372; 5 B. W. C. C. 694; *Starkey* v. *Clayton & Sons*, 18 B. W. C. C. 346; *Darroll* v. *Glasgow Iron & Steel Co. Ltd.* 50 Sc. L. R. 226; 6 B. W. C. C. 354. There was testimony, at the first hearing, that the employee worked for the United Novelty Shoe company from February 18, 1929, to July 29, 1929, but the record does not disclose where he worked previously or whether he had previously suffered from the disease. Evidence that he worked over five months for this employer before his hands broke out and that later outbreaks came after shorter periods of work is not enough to prove that the injury received when working for this employer contributed to his susceptibility to outbreaks after November 6, 1930.

The decree is to be reversed and a decree entered for the insurer.

*So ordered.*