### JAMES A. JOHNSON's (dependents') CASE.

Suffolk.     January 12, 1927. — March 2, 1927.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Finding by Industrial Accident Board.

A single member of the Industrial Accident Board after a hearing awarded compensation to a claimant. The Industrial Accident Board on review, having before them only the record of the testimony before the single member, also awarded compensation but based their decision upon a finding of fact different from the finding by the single member. There was evidence reported which would support either the finding by the single member or that by the reviewing board. *Held*, that the finding by the board superseded that of the single member, it being for the board to determine the credibility of the witness, and the board being at liberty to disbelieve any of the testimony of the witnesses which did not seem to them to be truthful.

A decree of the Superior Court awarding compensation under the workmen's compensation act to the dependents of an employee of a subscriber, who suffered injuries resulting in his death when he was thrown from a truck of his employer upon which under orders of a foreman he was going from the employer's garage to the place of his work, was affirmed.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation to de-

pendents of James A. Johnson, whose life was lost by reason of injuries received while in the employ of Joseph P. McCabe.

In the Superior Court, the case was heard by *Qua*, J. From the record it appeared that the decedent before his injury had been riding beside the driver, one Sullivan, on a motor truck of his employer on the way to his work under instructions from his foreman. The driver testified in direct examination before the single member of the board as follows: "They were going to start collecting ashes that morning at the place where they had left off the previous day. That was their custom,—to start in where they left off the previous day. They had left off on the day prior to the date of the accident, 'somewhere in Dorchester.' He was slowing up, as it was his intention to come to a stop so that both he and Johnson could get a cup of coffee. It was their custom when going to work in the morning to stop to get something to eat. . . . [the employer] knew of this custom, and never had any objection to their doing it. . . . He was slowing up at the time of the accident, and had pulled the truck in near the curb. Johnson then stood up on the running board and jumped from the truck. He landed on the sidewalk. The truck was going slowly at the time. . . . It is not the custom when he was driving a truck . . . for Johnson or any of the men who worked with him to get on or off the truck while it was moving, before it was wholly stopped. . . . He did not tell . . . [the employer] or anybody else where he worked that he did not know just how the accident happened. He talked with an investigator from the Industrial Accident Board within a few weeks after the accident happened. He told the investigator from the Industrial Accident Board that Johnson slipped off the step of the truck. Q. 'Was that true?' A. 'That was true.'"

Questioned by the single member, "Sullivan testified that Johnson jumped off the truck. He then stated that he did not know whether Johnson jumped or slipped off the truck."

In further direct examination, "Sullivan testified that any conflicting statements he may have made, whether he said that the deceased jumped off the truck or slipped off the truck, he meant to convey the idea that he went off the truck,

and he (witness) did not know whether he jumped off the truck deliberately or whether he slipped off the truck."

In cross-examination, Sullivan testified: "The truck was moving very slowly when Johnson slipped or fell from the truck. Witness was coming to a stop at the time. . . . Witness did not see Johnson standing up. He did not see Johnson on the seat beside him. The first thing he knew was that the crowd was yelling for him to stop the truck. He did not see Johnson either slip or jump from the truck. Witness stated that all he knew is that Johnson made a jump for the sidewalk; that that is all he remembered. He and Johnson had not had any talk about stopping at Logan's Lunch Room to get breakfast before he started to stop the truck. He had no recollection of Johnson leaving his seat, either getting up or standing up, for the purpose of getting off the truck. All he knows is that Johnson was found in back of the truck. Q. 'You don't know whether he slipped or fell or how he got off that truck, do you?' A. 'All I know he jumped. That's the last I seen of him.' He did not see Johnson's body going off the truck. He did not see anything happen on the driver's seat beside him. He knew that Johnson was on the truck with him. The first time he knew that Johnson was not on the truck with him was when he heard the crowd yelling for him to stop the truck."

The single member of the board refused to rule either that the deceased did not receive an injury which arose out of his employment or that the deceased did not receive an injury which arose in the course of his employment, as he found that the employee's death was due to a personal injury from falling or slipping from the truck upon which he was employed, as a result of which he sustained fatal injuries. He also refused to rule that the purpose for which the decedent was leaving his truck was not an act of his employment but a separate and independent undertaking of his own, as he found that the purpose for which the decedent was leaving his truck was reasonably incidental to his employment and was not objected to by Leary, foreman for his employer, the only condition being that it was expected that if the men stopped for breakfast on the way to the place where they left

off work the previous day, or where they were to begin work on any particular day, they would get to the starting point at eight o'clock.

The Industrial Accident Board on review, in awarding compensation, found and ruled as follows:

"The report of the board member contains all the material evidence.

"The reviewing board, upon all the evidence, affirm and adopt the findings and decision of the single member, except that the board find that the employee's death was due to a personal injury arising out of and in the course of his employment as a result of having been thrown from the truck upon which he was employed, that the employment of the deceased commenced at the barn of the subscriber, where it was his duty to report to Leary, foreman, with powers of superintendence for the subscriber, who gave him orders as to what truck to go out on and where his work was to be performed; and that on the morning of the injury the employee reported to Leary, who ordered him to go to work upon the truck from which he was thrown and fatally injured.

"Whether an unexecuted intent to stop for breakfast would take the employee outside the scope of his employment, as to which see *Keefe* v. *Boston & Albany Railroad,* 142 Mass. 251, need not be decided here as we find there was no such intent, being satisfied from the evidence that the employee was thrown from the truck while in the course of his employment. There is no evidence that the accident occurred while the truck was being stopped to allow the deceased employee and the driver to eat breakfast, aside from the testimony of the latter, and we feel from all the evidence that we are justified in placing no credence in this part of the driver's testimony."

By order of the trial judge, a final decree was entered directing payment of the compensation awarded by the board. The insurer appealed.

*W. I. Badger,* for the insurer.

*P. L. Keenan,* for the claimants.

RUGG, C.J. The Industrial Accident Board found that the employee's death was due to a personal injury arising

out of and in the course of his employment as a result of having been thrown from a truck on which he was riding; that his employment commenced at the barn of the subscriber, where he had reported and received his orders, which he was attempting to execute at the time of his injury. The board found it unnecessary to decide whether an unexecuted purpose to stop for breakfast would take the employee outside the scope of his employment, because satisfied that the employee was thrown from the truck in the course of his employment, disbelieving testimony of a contrary nature by the driver of the truck.

The findings of the board, if supported by evidence, supersede those of the board member. *Di Giovanni's Case*, 255 Mass. 241.

It might have been found to be a part of his work for the employee to ride from the employer's barn to the place of actual work. *Gilbert's Case*, 253 Mass. 538. *Vogel's Case*, 257 Mass. 3. *Donovan's Case*, 217 Mass. 76.

The credibility of witnesses was for the board and they were at liberty to disbelieve any part of the testimony of the driver of the truck which did not seem truthful. *Commonwealth* v. *Russ*, 232 Mass. 58, 70, and cases collected. *Weir's Case*, 252 Mass. 236.

The testimony of the driver of the truck was contradictory in several important particulars. But there was enough in it to support the conclusion made by the board that the employee was thrown from the truck in the course of his work. Its trustworthiness is not for us to determine. The finding by the board must stand because there is enough evidence to support the conclusion that the employee was thrown in the course of his work. *Pass's Case*, 232 Mass. 515. *Wooldridge's Case*, 254 Mass. 483.

*Decree affirmed.*