SALVATORE CARMOSSINO'S CASE.

Suffolk.    May 20, 1929. — June 25, 1929.

Present: RUGG, C.J., CROSBY, SANDERSON, & FIELD, JJ.

*Workmen's Compensation Act*, Amount of compensation, Partial in-
    capacity.   *Evidence*, Presumptions and burden of proof.

At the hearing in proceedings under the workmen's compensation act
    of a claim for compensation for partial incapacity, there was evidence
    that an employee, who suffered an attack of lead poisoning on October
    28, 1927, which arose out of and in the course of his employment,
    returned to work on February 23, 1928, and did light work for three
    weeks, when he was discharged; that during those three weeks he
    was sick "in his stomach" all the time and was dizzy.  An impartial
    physician reported from an examination of the employee made on
    February 9, 1928, in substance that he found "no pathology in him,"
    that "From a purely objective point of view" he saw "no reason for
    further incapacity.  From his story, however, it would seem that he
    was still suffering a moderate degree of weakness as a result of the
    previous lead poisoning and that he is still having some gastro-intestinal
    symptoms."  *Held*, that there was evidence which, though slight,
    warranted a finding that the employee was partially incapacitated.
The members of the Industrial Accident Board hearing an application
    by an employee for compensation as one partially incapacitated are
    entitled, in the absence of testimony as to his earning capacity, to
    use their own judgment and knowledge in determining that question,
    and may find a diminution in earning capacity although the employee
    has testified that, during a period of employment after his injury, he
    received the same wages as before.

CERTIFICATION to the Superior Court of a decision by
the Industrial Accident Board described in the opinion.

It appeared from the record that at the hearing by the
single member of the board it "was agreed" that the "em-
ployee met with an injury on October 28, 1927; that he
was paid compensation to February 22, 1928, when he
signed a settlement receipt and returned to work.  His
average weekly wages were $30.65."  Other material facts
and evidence shown by the record are stated in the
opinion.

The case was heard in the Superior Court by *Bishop*, J.,

who ordered the entering of the decree stated in the opinion. The insurer appealed.

*E. Field,* for the insurer, submitted a brief.

No argument nor brief for the claimant.

FIELD, J. This is a proceeding under the workmen's compensation act. G. L. c. 152. The single member of the Industrial Accident Board made the following findings: "Salvatore Carmossino, who had been employed by the Bethlehem Shipbuilding Corporation for fourteen years, suffered an attack of lead poisoning on October 28, 1927, and was paid compensation to February 22, 1928, inclusive . . . he returned to work February 23, 1928 . . . . He did light work until March 16, 1928, when he was discharged . . . during the three weeks the employee did light work he was weak and sick 'in his stomach.' . . . the employee is unable to do his former work as that of a painter, as a result of the lead poisoning which he suffered on October 28, 1927, but there are certain types of light work which he is able to do. . . . since March 16, 1928, the employee has had an earning capacity of $18 a week. He is therefore entitled to two thirds of the difference between $30.65, his wage at the time of the injury and $18 his earning capacity, or $8.43 a week." These findings were affirmed and adopted by the reviewing board. All the material evidence was reported. A decree was entered in the Superior Court that "Salvatore Carmossino has partial incapacity for work resulting from personal injury on October 28, 1927, arising out of and in the course of his employment by the Bethlehem Shipbuilding Corporation, Ltd., for which partial compensation is due at the rate of eight and 43/100 dollars ($8.43) per week from March 16, 1928." The insurer, the United States Mutual Liability Insurance Company, appealed.

The decree is correct if there is any evidence to support the findings. G. L. c. 152, § 35, amended by St. 1927, c. 309, § 8. *Pass's Case,* 232 Mass. 515. *Gravellese's Case,* 258 Mass. 170. No question is made that the employee suffered an attack of lead poisoning on October 28, 1927, and that it arose out of and in the course of his employment. See *Fitzgibbons's Case,* 230 Mass. 473. The insurer, however, con-

tends that there was no evidence that the employee after March 16, 1928, was partially incapacitated as a result of his former lead poisoning, or that his earning capacity was only $18 a week.

Though the evidence that the employee was partially incapacitated as a result of his former lead poisoning is slight, we cannot say that there is none. The employee testified at a hearing on April 4, 1928, that "When he returned to work in February he felt pretty well but he was not all well . . . they gave him the job of cleaning the office. He worked at that just three weeks when he was discharged. He was discharged March 16. During those three weeks he was always sick. He was sick 'in the stomach.' He was able to do the light work that they promised to give him. During those three weeks he would feel all right for one day and then for a couple of days he would feel sick. He is feeling just the same at the present time . . . . He worked steadily up to March 16, when he was laid off . . . . He has not done any work since March 16. He is always sick and he cannot work at his work as a painter. He is sick 'in his stomach' all the time and his head is dizzy. His head, his stomach, and sometimes his back bothers him. That is all." The impartial physician (see G. L. c. 152, § 9), whose report is a part of the record, examined the employee on February 9, 1928, and reported as his "Opinion" that "This man's story (constipation, abdominal cramps, etc.) is very suggestive of acute lead poisoning. I find no pathology in him at present. From a purely objective point of view I see no reason for further incapacity. From his story, however, it would seem that he was still suffering a moderate degree of weakness as a result of the previous lead poisoning and that he is still having some gastro-intestinal symptoms. I believe that, at any rate, it would be of benefit to him to do some work even if the work be very small in amount and very light." If the testimony of the employee and this statement of opinion, in spite of testimony conflicting therewith, were believed by the board it could find that the employee was partially incapacitated for work after March 16, 1928, and that there was a causal connection between that condition

and the attack of lead poisoning of the preceding October. This evidence if true goes farther in proof of the employee's case than did that in *Falco's Case,* 260 Mass. 74, or that in *Green's Case,* 266 Mass. 355. There is more than a "mere conjecture or surmise." See *Green's Case, supra,* page 357. See also *Sponatski's Case,* 220 Mass. 526, 528. The credibility of the witnesses, and the weight of conflicting testimony were for the board. *Johnson's Case,* 258 Mass. 489.

We cannot say that the finding that the earning capacity of the employee was only $18 a week after March 16, 1928, was erroneous. Nothing in this case prevents the application of the rule stated in *O'Reilly's Case,* 265 Mass. 456, 458, that "in the absence of testimony as to the earning capacity of the employee, the members of the board are entitled to use their own judgment and knowledge in determining that question." See *Walsh's Case,* 227 Mass. 341. The board was not concluded by the fact that, as the employee testified, during the period of his employment after his attack of lead poisoning he received the same wages as before. *Johnson's Case,* 242 Mass. 489, 492. See *Donnelly's Case,* 243 Mass. 371; *Dragon's Case,* 264 Mass. 7.

*Decree affirmed.*