JOHN PERANGELO'S CASE.

Suffolk.    April, 10, 13, 1931. — October 2, 1931.

Present: RUGG, C.J., PIERCE, CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Occupational disease, Findings by Industrial Accident Board. *Proximate Cause. Evidence*, Opinion: expert; Presumptions and burden of proof.

At the hearing by the Industrial Accident Board of a claim under the workmen's compensation act by an employee of a cordage company, there was evidence that the employee, forty-six years of age, had been engaged for fourteen years for the same employer in spinning

sisal on a motor-driven machine which rotated a bobbin and made a dust that fell on his hands as he fed it, the sisal and an emulsion used upon it in the machine varying from day to day. No evidence of the exact composition of any emulsion used was introduced. While he was at work in October, his arms troubled him and he consulted and was treated by the insurer's physician. He kept at work until December, when he went to a hospital, whose record showed the diagnosis of his trouble as "Dermatitis venenata," a skin disease due to poison. On advice of the insurer's physician he consulted an expert in dermatology in January, who examined him and gave him medicine. The employer made a report to the board in March and filed a paper styled "compromise agreement," which stated the date of injury as unknown or in doubt, and the cause, claimed by the employee as his work, "to be open for future agreement or hearing by the Industrial Accident Board." Payment was made by the insurer under the compromise agreement until May 3. On May 6, the claim was filed. On May 5, an impartial physician, appointed by the board, examined the employee and later reported, describing his physical condition, and setting out his statement that several other employees had been affected in the same way by something like an oil used in the material they were spinning, and stating: "If his statements are correct I believe this an 'industrial dermatitis'" but that this opinion was made without having a report furnished by "the Inspector"; later he reported that, having examined certain reports which put a different aspect on the conditions stated as facts by the employee, he believed that the employee's condition on May 5 was not due to his work. The expert who had examined the employee at the suggestion of the insurer's physician, basing his opinion on examination and treatment of the employee in January and later observation, inspection of the cordage works, and reports, not in evidence, from those whom he had instructed to make studies of conditions pointed out by him, which included emulsions furnished by the cordage company, testified that, while earlier he had held a different opinion and had attributed the employee's condition to his work, it then was his opinion that the employee's condition was an eczema not due to his work. The board decided that the employee had received a personal injury within the provisions of the act and awarded compensation. On presentation of the record to the Superior Court, a final decree was entered denying compensation. The employee appealed. *Held*, that

(1) Since the Superior Court has no authority to overturn a decision of fact made by the Industrial Accident Board if there is any evidence which will support the findings on which the decision rests, unless, as matter of law, a different finding is required by the evidence, the question before this court was, whether as a matter of law the evidence disclosed by the record would permit the finding by the board;

(2) The burden was on the employee to show that the trouble from which he suffered was the result of an injury which was due to his work and arose out of it;

(3) The evidence was not sufficient to show that the employee was suffering from a personal injury within the meaning of the workmen's compensation act;

(4) Although both physicians stated that their earlier opinions were that the employee was suffering from industrial dermatitis contracted at his work, and their earlier opinions were competent to diminish the credit to be given to the final opinions to the contrary, their earlier opinions were not admissible as proof that a causal connection existed between the work and the injury: their final opinions must be taken as their evidence;

(5) The self-serving statements of the employee which appeared in the reports of the experts were not substantive evidence of the truth of the facts he stated; it nowhere else appearing that there was basis for an inference that other workmen besides the claimant suffered similarly at the same time, there was no evidence of that fact;

(6) The report from the hospital did not go beyond evidence of the existence of industrial dermatitis: it gave no opinion respecting its cause;

(7) The employer's report and the so called "compromise" agreement, which must be read together, showed that no agreement as to causal connection of work and suffering had been reached between employee, employer and insurer;

(8) The evidence showed merely an outbreak of dermatitis, or eczema, occurring while the employee was at a work which he had been engaged in for years without similar outbreaks, but there was nothing to indicate that the work caused the outbreak;

(9) The final decree dismissing the claim notwithstanding the decision of the Industrial Accident Board was proper.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation to the claimant.

Material evidence and facts shown by the record are described in the opinion. The case was heard in the Superior Court by *Whiting*, J., by whose order a final decree was entered dismissing the claim. The employee appealed.

The case was argued at the bar in April, 1931, before *Rugg*, C.J., *Carroll*, *Wait*, *Sanderson*, & *Field*, JJ., and afterwards was submitted on briefs to all the Justices except *Crosby*, J.

*V. W. Marr & S. B. Horovitz*, for the claimant.

*E. Field*, (*R. H. Field* with him,) for the insurer.

WAIT, J. This is an appeal from a decree of the Superior Court adjudging that John Perangelo did not re-

ceive a personal injury arising out of and in the course of his employment October 18, 1929, while in the employ of the Plymouth Cordage Company, and dismissing his claim. The decree was entered upon the insurer's presentation, under the provisions of the workmen's compensation act, G. L. c. 152, § 11, of a record of the Industrial Accident Board which set out that a single member and a majority of a reviewing board of that board had decided that Perangelo had received such a personal injury, and that compensation in a stated amount was awarded to him.

No citation of authorities is needed in support of the recognized rule of our law that the Superior Court has no authority to overturn a decision of fact made by the Industrial Accident Board if there is any evidence which will support the findings on which the decision rests, unless, as matter of law, a different finding is required on the evidence. Its decree must follow in accord with the decision of the Industrial Accident Board as to facts, unless, as matter of law, that decision is erroneous.

The question before us is whether the evidence disclosed on the papers, in law, will permit the finding of the board. The burden on the claimant was to produce evidence that the trouble from which he suffered was the result of an injury which was due to his work and arose out of it. There was no dispute that for fourteen years Perangelo, a man forty-six years of age, had been in the employ of the Plymouth Cordage Company engaged in spinning sisal on a motor-drawn machine which rotated a bobbin and made a dust that fell on his hands as he fed it. The sisal and an emulsion used upon it in the machine varied from day to day. No evidence of the exact composition of any emulsion used was introduced, but Perangelo testified that there were "oil and soaps and some kind of a powder like a salt in it." About October 18, 1929, while he was doing the work he had always done, his arms troubled him and he consulted Dr. Hill, the company's physician. He was treated by Dr. Hill and kept at his work until December 3, 1929. Thereafter, until the hearing before the single member on July 23, 1930, he worked only a day and a half.

He ceased to work because his arms broke out again. By Dr. Hill's advice he consulted Dr. Cheever, an expert in dermatology at Boston, who examined him and gave him medicine. He went to the Massachusetts General Hospital. Its record of December 27, 1929, shows the diagnosis of his trouble as "Dermatitis venenata," a skin disease due to poison. On March 27, 1930, the employer's report of injury pursuant to the statute, and a paper styled "compromise agreement." were filed, which stated the date of injury as unknown or in doubt, and the cause, claimed by the employee as his work, "to be open for future agreement or hearing by the Industrial Accident Board." Payment was made by the insurer under the compromise agreement until May 3, 1930. On May 6, 1930, this claim was filed.

On May 5, 1930, Dr. Smith, appointed impartial physician (G. L. c. 152, § 9), examined Perangelo. Later he reported, describing his physical condition, and setting out his statement that several other employees had been affected in the same way by something like an oil used in the material they were spinning. He reported: "If his statements are correct I believe this an 'industrial dermatitis'" but that this opinion was made without having a report furnished by "the Inspector." On June 24, 1930, he reported further that he had read reports of a Mr. Ward "and M. I. T.'s" (Massachusetts Institute of Technology) which put a different aspect on the conditions stated as facts by Perangelo, and a report from a Dr. Proctor with regard to biochemical analysis and self-experimentation; and that with this new evidence he believed Perangelo's condition on May 5 was not due to his work. Dr. Cheever, called by the insurer, gave as his opinion that Perangelo's condition was an eczema not due to his work. He based this opinion on examination and treatment of Perangelo in January, 1930, and later observation since then, inspection of the cordage works and reports from those whom he had instructed to make studies of conditions pointed out by him which included emulsions furnished by the cordage company. He stated that earlier he had held a different

opinion and had attributed Perangelo's condition to his work. He explained what had led him to change. Neither Dr. Smith nor Dr. Cheever denied that an industrial dermatitis could be caused by working with sisal. The reports of "M. I. T.," of Dr. Proctor, of Ward and of the inspector referred to by Dr. Smith were not before either the board member or the reviewing board.

The workmen's compensation act does not provide compensation for suffering from occupational diseases. "A disease of mind or body which arises in the course of employment, with nothing more, is not within the act." *Maggelet's Case*, 228 Mass. 57, 61. There must be a personal injury — a lesion directly traceable to a happening in the employment and arising out of it. Here the evidence is not sufficient to show such injury.

The only medical evidence will not support a finding that the employee had suffered an injury in the course of his employment and arising out of his work. Dr. Cheever testified that in his opinion he had not. The impartial physician's report, in its final form, stated the same opinion. It is true that both physicians earlier had held a contrary opinion. This fact was competent to diminish the credit to be given to the opinion finally given to the board; but it was not admissible as proof that a causal connection existed between work and injury. The opinion of an expert which must be taken as his evidence is his final conclusion at the moment of testifying. *Lyons* v. *Chicago City Railway*, 258 Ill. 75, 80. *McGovern* v. *Hays & Smith*, 75 Vt. 104, 107. See *Leland* v. *Order of United Commercial Travelers of America*, 233 Mass. 558, 563. It is also true that their final opinions could be found to be based upon lack of confidence in the statements of fact made to them by the employee rather than upon purely medical reasons. This, however, went only to the credit to be given their testimony. The self-serving statements of the employee which appeared in their evidence were not substantive evidence of the truth of the facts he stated. Nowhere else was there basis for an inference that other workmen besides the claimant suffered similarly at the same time,

which might have tended to show that something in the composition or materials in use on October 18 had caused an injury to him and to them. The evidence from these experts was admissible to prove the physical condition of the claimant which they knew from the exercise of their own senses; but not to prove the truth of narrative facts which he asserted in regard to things of which they had no personal knowledge.

The report from the hospital did not go beyond evidence of the existence of industrial dermatitis. The report gives no opinion with regard to the cause. The employer's report and the so called "compromise" agreement, which must be read together, show that no agreement as to causal connection of work and suffering had been reached between employee, employer and insurer.

There is thus nothing but an outbreak of dermatitis, or eczema, occurring while the employee was at a work which he had been engaged in for years without similar outbreaks, to indicate that the work caused the outbreak. That is insufficient in law to support a finding of causal relation. Nor is that finding authorized by the presence of evidence that the work might have a causal connection with the physical trouble. Something more than a probability must be shown or the finding is speculative only, insufficient to support a determination of right or liability. We are unable to find that something in the evidence, and our order must be

*Decree affirmed.*