### JOSEPH BISCARDI'S CASE.

Suffolk.   June 27, 1933. — September 11, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & FIELD, JJ.

*Workmen's Compensation Act,* Findings by Industrial Accident Board, Incapacity. *Evidence,* Presumptions and burden of proof.

Where the evidence in proceedings under the workmen's compensation act warranted findings by the Industrial Accident Board that an employee, who lost the vision of one eye due to an injury arising out of and in the course of his employment, returned to the same work in about a month and continued at it for nearly four years, during which he received a raise in pay; that he had accustomed himself to such work after his injury; that at the end of that period he lost his employment because of lack of work; that thereafter he was handi-

capped by limited vision in other work to which he was forced to turn; and that he had not been "rehabilitated . . . for all kinds of work," a conclusion was warranted that he then had a partial incapacity which resulted from his injury.

It appearing from the record in the proceedings above described that the questions before the board were the employee's incapacity subsequent to the time when he returned to work following his injury and whether he was handicapped in other work, and that, previous to his injury, he was receiving $27.50 per week, findings by the board, that after his discharge from work he was not rehabilitated for all kinds of work, that "he had an earning ability of $10 a week, and that there is therefore due him partial compensation . . .," were the equivalent of an affirmative finding that the employee had a partial incapacity for work which resulted from the injury.

Where, in proceedings under the workmen's compensation act, a single member of the Industrial Accident Board stated in his findings that the opinions of two medical experts were somewhat at variance and that "Regardless of the merits of the views of either of them, it seems to me that the main question to be decided here is a practical one rather than a medical one"; and made his findings "upon consideration of all the evidence," there was no merit in a contention that the medical testimony was of no consequence and should be considered as not having been given.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

Material evidence before the single member of the board and findings by him, which were affirmed and adopted by the board in review, are described in the opinion. By order of *Whiting*, J., a decree in accordance with the board's decision was entered. The insurer appealed.

The case was submitted on briefs.

*G. Gleason*, for the insurer.

*D. Goldstein & J. Asher*, for the claimant.

CROSBY, J. This is an appeal from a decree ordering compensation under the workmen's compensation act. G. L. (Ter. Ed.) c. 152. The employee while in the employ of Lowell Wrench Company received an injury arising out of and in the course of his employment. The single member of the Industrial Accident Board made the following findings: "He sustained an injury to the right eye on October 26, 1927; was paid weekly compensation at $18, amounting to a total of $82.29, up to November 28,

1927, when compensation was stopped and he returned to work . . . he received $500 for the loss of vision in that eye . . . the employee remained at work from his return just before December 1, 1927, until September, 1931, a period of nearly four years . . . he not only made as much money as he did before his injury but actually received a raise in pay during that period. The character of the work which this employee performed . . . was machine work involving drilling, milling and other operations. . . . Inasmuch as . . . [the employer] raised his pay during that period it is difficult to believe this was done from sympathy or from any other cause; but it would appear rather that the employee was entitled to that pay because of his ability to do the work notwithstanding the loss of one eye. The employer testified that in September, 1931, he suspended this employee and three others merely because of lack of work. I find that such was the case. Thereupon the employee sought other work, and obtained a job on September 24, 1931, with a contractor, using a pick and shovel . . . he had worked only four or five days at this when he suffered an accident, 'breaking his foot' with a pick; and on account of this injury he was paid compensation by the insurer of Carl Bianchi until January 19, 1932. . . . Having lost one eye, his field of vision was materially lessened; and it seems reasonably clear that he must have required quite a considerable period of time in which to become accustomed to this change in the character of his vision . . . he was kept at work by his employer; and I think it is a fair inference that he became nearly, if not quite as effective as he was before his injury, in view of the fact that he remained working nearly four years and that he received an increase in pay during that time . . . what he accustomed himself to with the limited range of vision following the injury was work which he was doing before the accident, — machine work. When the work of his employer came to an end because of business conditions he was then obliged to seek other work. The question arises whether or not he was handicapped in that other work to which his limited vision was not accustomed. . . . Commendable as was the effort

of the employer to rehabilitate this man by taking him back to work after only a little more than four weeks following his injury, yet, upon consideration of all the evidence, I cannot find that this effort rehabilitated him for all kinds of work. I find that following his discharge and up to the date of the filing of this decision (with the exception of a period from September 24, 1931, to January 19, 1932, during part of which time he worked for another employer and during another part received compensation for an injury sustained there) he had an earning ability of $10 a week, and that there is therefore due him partial compensation at the rate of $11.67 a week for that time, a period of twenty-seven and four sevenths weeks, amounting to $321.76. Compensation at the rate of $11.67 a week is to continue; but only for a limited period. Considering the length of time which has elapsed, it appears to me that the employee should now accommodate himself to other kinds of work and that the insurer will be entitled to a discontinuance or an adjustment of compensation at no very distant date. The employee should obtain other work so that this result may be obtained." These findings were affirmed and adopted by the reviewing board.

All the material evidence was reported. A decree was entered that "the said Joseph Biscardi has partial incapacity for work resulting from personal injuries received on October 26, 1927, arising out of and in the course of his employment by the Lowell Wrench Company, for which partial compensation is due at the rate of $11.67 per week from September 18, 1931, and continuing thereafter subject to all provisions of the workmen's compensation act, excepting therefrom the period from September 24, 1931, to January 19, 1932."

The decree must stand if there is any evidence to support the findings. *Carmossino's Case*, 268 Mass. 35, 36. G. L. (Ter. Ed.) c. 152, §§ 11, 35.

The insurer contends that neither the single member nor the reviewing board made a finding that the employee had partial incapacity for work which resulted from the injury, and that there is no evidence in the record, to which weight

was given, to support such a finding if one had been made. These contentions cannot be sustained. The question before the single member and the reviewing board as set forth in the record was "Incapacity subsequent to November 28, 1927." The single member found that the employee "lost one eye," and he stated that the question for decision was whether the employee was "handicapped in that other work to which his limited vision was not accustomed." He was unable to find that the effort of the employer "rehabilitated him for all kinds of work," and found that following his discharge (with the exception of a certain named period) "he had an earning ability of $10 a week, and that there is therefore due him partial compensation . . . ." These findings considered together are the equivalent of an affirmative finding that the employee had a partial incapacity for work which resulted from the injury. The evidence was sufficient to warrant a finding of partial incapacity. Succinctly stated, the single member and the board found that the employee had a limited range of vision following the loss of his right eye; that he accustomed himself to the work he had been doing before the accident, but was handicapped in other work to which he was forced to turn on account of business conditions; and that his limited vision was not accustomed to that other work.

The employee testified that he was drilling holes into iron and a piece of steel went into his right eye; that he was earning at that time $27.50 a week; that he was out of employment until about Thanksgiving Day of that year and then went back to the same employer (Lowell Wrench Company) receiving a raise in pay; that he was laid off in September, 1931, because there was nothing to do there, and that since that time he had applied for work to Dodge, the general manager of the company; that he "had done machine work before he went to work for Dodge. He had worked at the Leland-Gifford Co. about a year"; that "He asked them for a job many times"; that because he was laid off in 1931 he went to work for Carl Bianchi doing pick and shovel work and that while so employed "he broke his foot"; that "He was picking and he meant to

throw the pick on the right place in the dirt and he missed
the place and struck a stone and the pick bounced back
on his foot"; that he worked for one Pelletier doing labor-
ing, carpentry work and painting, but that Pelletier let
him go; that "he was painting windows and many times
he could not see very well and he would paint the window
glass. He would go over on the windows two or three
inches. . . . He cannot see at all with his right eye. If he
closes the left eye he cannot tell whether it is light or dark,
— everything is black. With the left eye he cannot tell
the distance between two objects accurately." He further
testified that Pelletier paid him thirty or thirty-five cents
an hour; that sometimes he worked two or three days a
week; that it was not steady but "Pelletier could keep
him if he was able to do the work." Pelletier testified that
the employee let the paint "run over on the glass about an
inch or an inch and a half" and that he "let him go be-
cause he did not really care to have him."

Dr. Hyman S. Queen, called by counsel for the employee,
testified that he examined the employee; that there "was
no vision at all in the right eye, nor was there any light
perception there. It is an absolutely blind eye." This
witness further testified that the employee "has a loss of
binocular vision and also has a loss for perception of objects,
that is, distances between objects"; that this loss of per-
ception "is because he has not the use of his right eye that
throws his sense of perception off"; that "after a period
of four years" the employee would have "accommodated
his remaining eye to the work in hand," assuming he "did
the same things after the accident as he did before." Dr.
Albert E. Cross, called by counsel for the insurer, testified
that "You get a loss of the binocular field when you lose one
eye," and that the reason "a man with one eye is limited in
work" is "because of his lack of judgment of distance."

Since the findings are of fact and there is evidence to
support them they must stand. *Johnson's Case,* 258 Mass.
489, 493. *Morrell's Case,* 278 Mass. 485, 487. *Hurwitz's
Case,* 280 Mass. 477, 481. If the employee could not return
to his former employment because of business conditions,

and sought for or secured employment elsewhere which he could have performed if it were not for his disability because of his injury, his earning power and labor efficiency were lessened within the meaning of the statute, and he was entitled to the compensation therein provided. *Capone's Case*, 239 Mass. 331, 333. *Riley's Case*, 278 Mass. 257, 258, 259. The facts which could be found in the case at bar distinguished it from *Driscoll's Case*, 243 Mass. 236. The single member of the board stated that "There was testimony by two physicians specializing in matters of the eye. Their opinions were somewhat at variance. Regardless of the merits of the views of either of them, it seems to me that the main question to be decided here is a practical one rather than a medical one." The insurer contends that, in view of this statement, the medical testimony is of no consequence and should be considered as not having been given. This contention cannot be sustained. The single member further stated: "upon consideration of all the evidence, I cannot find that this effort rehabilitated him for all kinds of work." The decree of the Superior Court is not erroneous. *Johnson's Case*, 242 Mass. 489, 494, 495.

As no error of law appears the entry must be

*Decree affirmed.*