FRANK HUMMER'S CASE.

Berkshire.    December 8, 1944. — February 5, 1945.

Present: FIELD, C.J., QUA, DOLAN, RONAN, & SPALDING, JJ.

*Workmen's Compensation Act,* Incapacity; Procedure: waiver, findings
   by Industrial Accident Board.    *Proximate Cause.    Res Judicata.
   Waiver.*

A finding by a single member of the Industrial Accident Board, from
   which there was no claim for a review, upon a claim of total disa-
   bility under G. L. (Ter. Ed.) c. 152, § 34, as amended, that after an
   injury to the employee which required surgical operations and ampu-
   tation of part of his hand, total disability existed and was in part due
   to the fact that he had been deprived of the use of the hand and in
   part due to heart disease which had existed at the time of the injury,
   and that the surgical operations had "precipitated an attack of symp-
   toms due to the disease from which" he "is not as yet free and which
   in themselves are totally disabling," did not as matter of law establish
   that, whatever the heart condition might be at subsequent times,
   such later condition must be deemed to have been caused by the origi-
   nal injury: the causal connection between the injury and a later al-
   leged disabling condition of the heart remained to be proved at the
   hearing of a claim for an award for total and permanent disability
   under § 34A, inserted by St. 1935, c. 364, made by the employee after
   he had received the full amount permitted by § 34, as amended,
   awarded in the earlier proceeding.
Evidence at the hearing of a claim by an employee under G. L. (Ter. Ed.)
   c. 152, § 34A, inserted by St. 1935, c. 364, for compensation as for
   a total and permanent disability due to loss of a hand and to a heart
   condition caused by surgical operations required by the nature of the
   injury, warranted a finding by a single member and by a reviewing
   board that there was no causal connection between the original injury
   and the heart condition as shown at the hearing.
A contention by an employee, that testimony at the hearing of his claim
   by a single member of the Industrial Accident Board did not warrant
   a finding made by the single member and adopted by a reviewing
   board in denying the claim, was not open in this court on appeal
   from a decree of the Superior Court based on the board's decision
   where it appeared that no such question was raised either before the
   single member or the reviewing board.
Disability due to a heart disease which, on a claim by an employee under
   G. L. (Ter. Ed.) c. 152, § 34A, inserted by St. 1935, c. 364, was war-
   rantably found not to have a causal connection with an injury to his
   hand, could not be considered in determining whether the condition
   of the hand rendered him totally and permanently disabled.

Evidence that a butcher had lost the use of his right hand through an
injury but could do such work as a one-handed man could do, except
heavy work prevented by a heart condition not causally connected
with the injury, did not as matter of law require a finding by the In-
dustrial Accident Board that he was totally and permanently disabled
within G. L. (Ter. Ed.) c. 152, § 34A, inserted by St. 1935, c. 364.

CERTIFICATION to the Superior Court under the provi-
sions of the workmen's compensation act of a decision by
the Industrial Accident Board denying a claim under G. L.
(Ter. Ed.) c. 152, § 34A, inserted by St. 1935, c. 364, for
compensation as for total and permanent disability.

In the Superior Court, a decree was entered by order of
*Burns*, J., dismissing the claim.

*S. B. Horovitz*, for the claimant.

*E. H. Potter*, for the insurer.

RONAN, J. The employee, a butcher, while taking meat
out of a barrel on September 28, 1937, received a scratch
on the back of his right hand which became infected, neces-
sitated three operations at a hospital where he was con-
fined for several months, resulted in the amputation of a
large part of his right hand, and rendered his hand per-
manently incapable of use. During the last operation, he
suffered a pulmonary embolism or a coronary thrombosis
and became critically ill. Upon the application of the
insurer to discontinue compensation, a single member of
the Industrial Accident Board found, on March 5, 1941,
that the employee was totally disabled; that his total disa-
bility was in part produced by the fact that he had been
totally deprived of the use of his right hand and in part
due to heart disease; that he had a heart disease which
existed at the time of his injury, but that the surgical
operations required in the treatment of his injury "precipi-
tated an attack of symptoms due to the disease, from which
symptoms he is not as yet free and which in themselves
are totally disabling." He ordered the continuance of pay-
ments at the rate fixed for total incapacity. Neither party
sought a review of this decision.

The insurer made payments amounting to $4,500, the
maximum amount provided by G. L. (Ter. Ed.) c. 152,

§ 34, as amended by St. 1935, c. 332, § 2, and St. 1941, c. 624, for total incapacity. The insurer also paid $750 as specific compensation for the injury to the right hand. G. L. (Ter. Ed.) c. 152, § 36, as appearing in St. 1935, c. 333. The employee then applied for further compensation under G. L. (Ter. Ed.) c. 152, § 34A, inserted by St. 1935, c. 364, on the ground that the disability caused by his injury was total and permanent. The matter was heard by a member of the board other than the one who had conducted the earlier proceeding in 1941. At this last hearing the employee's physician testified, as he had at the previous hearing, that the surgical operations precipitated the heart attacks and that he saw no improvement in the employee's condition. The hospital record disclosed that, following an operation on his hand, the employee had suffered an embolism in his right lung. The record made no mention of anything happening to the heart. The employee's physician did not agree with the employee's surgeon that he had suffered a pulmonary embolism but was inclined to believe, from changes he observed when he examined the employee, that he had suffered a coronary thrombosis, although it was unusual for an operation to produce a coronary thrombosis and pulmonary embolisms more commonly result from an operation. He had never seen a coronary thrombosis that he could say was caused by an operation. He testified that the operation might have precipitated a coronary thrombosis a bit earlier than it would otherwise have occurred. He also testified, in answer to a question by the single member as to whether or not there was a causal connection between present disability and the injury, taking into consideration the infection and the operations following the injury, "that he thought that may be considered in total as an effort factor that may or may not precipitate such a condition." He did not know whether the present condition of the employee's heart would have been any different if he had not sustained the injury. There was also evidence that the employee had some heart muscle degeneration but no more than many men of his age have; that the infection and

surgical operations would not produce this damage to the heart muscles nor would they have any effect upon the arteries of the heart; that the degeneration of the heart muscle was not sufficient to cause disability; that if the employee suffered a coronary occlusion or thrombosis, then the changes wrought by the occlusion would disappear as soon as the occlusion had ·healed which might be· a few weeks, months or sometimes not at all; that if the employee had suffered a coronary thrombosis it healed in about two weeks; and that his present heart condition "has nothing to do with his injury." There was also testimony that the employee was able to do such work as a one-handed man might do, and that notwithstanding the degeneration of the heart muscle he could ·do any type of work except hard laboring jobs. There was testimony to the contrary.

The single member found that the employee as a result of the original injury has lost the use of his right hand; that in addition he has a heart condition that is disabling to some degree; and that the combination of the injury and the heart condition renders the employee totally disabled. He found that the heart condition from which the employee is suffering was not causally related to the injury; that apart from the heart condition, the employee for all practical purposes was a one-handed man in the labor market, but that he was not thereby totally and permanently disabled. He denied, on December 18, 1942, the claim for further compensation. A reviewing board adopted the findings of the single member and dismissed the claim. The employee appealed from a final decree entered in the Superior Court dismissing his claim.

The employee contends that the finding made in the earlier proceeding that the surgical operations necessitated by the injury had brought on an attack of the existing heart disease was equivalent to a finding that there was a causal connection between the injury and the disease, and that that finding from which no review was taken settled the existence of this relationship. It is true that the liability of the insurer when once finally determined cannot be fur-

ther heard by a single member or a reviewing board, and that a decision of the member or the board, from which no review or appeal is taken, that incapacity has ceased, where the case is not reserved for further consideration or in the absence of a statute authorizing further consideration, is also final and that there is no jurisdiction to hear claims for disability alleged to have been subsequently sustained. See G. L. (Ter. Ed.) c. 152, § 12, as amended by St. 1932, c. 117. *Hurley's Case*, 235 Mass. 387. *Kareske's Case*, 250 Mass. 220. *Brode's Case*, 251 Mass. 414. *McCarthy's Case*, 253 Mass. 553. *O'Neil's Case*, 262 Mass. 266. *Ziccardi's Case*, 287 Mass. 588.

The determination of the cause and extent of the then existing incapacity of the employee was the only question presented for decision at the first proceeding. That the loss of the use of the hand was permanent was not disputed. The duration of his disability due to his general condition was not in issue and was not decided. The length of time that the effect of the surgical operations might be reflected in the condition of the heart was not passed upon. The finding went no farther than to establish that the operations precipitated an attack of the symptoms of heart disease "from which symptoms he is not as yet free." There is nothing here suggestive of any lasting injury to the heart. The flare-up of the heart condition had not then subsided, and there is no intimation in any finding made in the first proceeding that the heart condition in so far as it was affected by the injury would persist indefinitely. *Hunnewell's Case*, 220 Mass. 351. *Weir's Case*, 252 Mass. 236. *Hanson's Case*, 264 Mass. 300. *Panagotopulos's Case*, 276 Mass. 600.

The question of the permanency of the employee's disability did not arise until the second proceeding. The fact that the heart condition had previously been accentuated by the injury and had contributed to the total disability from which he was found to have suffered was not an adjudication that, whatever the heart condition might be in subsequent years, it must be deemed due to the injury. It was the duty of the single member and the reviewing board

in the second proceeding to ascertain the actual physical condition of the heart at that time and then determine whether the evidence showed that it was or was not connected with the injury. The burden was on the employee to show that he was entitled to compensation. *Ginley's Case*, 244 Mass. 346. *Hatch's Case*, 290 Mass. 259. *Davis's Case*, 304 Mass. 530. It could have been found that the employee was at the time of the second proceeding suffering from a degeneration of the muscles of the heart. In determining whether that condition was traceable to the original injury, the single member could consider the finding made in the previous proceeding that the surgical operations had precipitated a heart attack, together with the other evidence, some of which tended to show that the effect of the injury upon the heart had still continued and some of which strongly indicated that the present condition of the heart had nothing to do with the original injury. The fact that the condition of the employee's heart was the same as it would have been if he had not incurred the injury would not bar an award of further compensation if the employee proved that the present condition was due to the aggravation caused by the injury, *Duprey's Case*, 219 Mass. 189, 193, but the fact that the present heart condition might have developed to its present extent through natural causes alone called for careful consideration of the evidence, which in this aspect consisted chiefly of medical testimony. Whether the heart condition existing at the time of the second proceeding was traceable to the original injury was a question of fact. The single member and the reviewing board were not required to find that the detrimental effect exerted upon the heart by the surgical operations still continued or in some way had contributed to the present heart condition, and there was enough in the testimony to warrant the finding that there was no causal connection between the present condition of the heart and the original injury. That finding must stand. *West's Case*, 313 Mass. 146. *Amon's Case*, 315 Mass. 210.

It is next contended that the single member was in error in stating that the testimony of the employee's physician

would not warrant a finding that there was a causal relation between the heart condition and the injury. It is to be noted that the finding of the absence of such relation was based upon all the evidence. Furthermore, if the employee thought that the point was worth raising, he should have done so before the member or the reviewing board, and it is too late to raise it for the first time in this court. *Wnukowski's Case*, 296 Mass. 63. *Indrisano's Case*, 307 Mass. 520.

It is finally urged that the loss of the use of his right hand by one whose only occupation was that of a butcher renders him totally and permanently disabled and entitles him to further payment under G. L. (Ter. Ed.) c. 152, § 34A, as inserted by St. 1935, c. 364. This section, after designating certain injuries, of which the loss of a hand is not one, provides, in the absence of conclusive proof to the contrary, that such injuries shall be considered to constitute permanent total disability, and that "In all other cases permanent total disability shall be determined in accordance with the facts, and proof thereof shall be by weight of the evidence." Disability due to a heart disease, having been found not to have a causal connection with the injury, cannot be considered in determining whether the condition of his hand has rendered him totally and permanently disabled. There was testimony that the employee was able to do such work as a one-handed man could do. He did not seek employment as apparently he believed that the condition of his heart would prevent him from working. But even if this were so, there was evidence that he could do any type of work, so far as his heart condition was concerned, except work that required lifting or heavy labor. The fact that a man has lost his right hand warrants a conclusion that he is prevented from performing many types of work. *Morrell's Case*, 278 Mass. 485. *Hurwitz's Case*, 280 Mass. 477. *Manley's Case*, 282 Mass. 38. But whether the loss of a hand results in any particular case in total and permanent disability is usually a question of fact. The phraseology of the statute, G. L. (Ter. Ed.) c. 152, § 34A, in dealing with an injury of this character strongly indi-

cates that the disability resulting therefrom presents an issue of fact. The loss of a single member, as a hand, leg or arm, or an organ, as an eye, has sometimes been found as a matter of fact to constitute total incapacity and at other times to amount to partial incapacity in awarding compensation under G. L. (Ter. Ed.) c. 152, §§ 34, 35. *Sullivan's Case,* 218 Mass. 141. *Duprey's Case,* 219 Mass. 189. *Lemieux's Case,* 223 Mass. 346. *Paterno's Case,* 266 Mass. 323. *Percival's Case,* 268 Mass. 50. *Morrell's Case,* 278 Mass. 485. *Hurwitz's Case,* 280 Mass. 477. *Manley's Case,* 282 Mass. 38. The nature of the inquiry is the same in determining whether a similar injury has resulted in total and permanent disability.

The statement of the single member that "I find and rule" (a common formula which "has been interpreted so as to require us to support the decision if warranted upon the evidence," *Flesher* v. *Handler,* 303 Mass. 482, 483, and imports "that such conclusion is permissible as matter of law and is found as matter of fact," *Roney's Case,* 316 Mass. 732, 734) that the disability is not total and permanent was a finding of fact and not a ruling of law. This finding is not lacking in support from the testimony and in accordance with the general principle cannot be reversed. *McGowan's Case,* 288 Mass. 441. *Mozetski's Case,* 299 Mass. 370.

*Decree affirmed.*