HARRY McKEON'S CASE.

Suffolk.    May 3, 1950. — July 3, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Incapacity, Silicosis.

Evidence in a workmen's compensation case warranted a finding by the Industrial Accident Board that an employee suffered a partially incapacitating and compensable personal injury on a certain date from silicosis incurred through his work as a molder over a long period of years, notwithstanding that the plant in which he worked closed down on that date and that he worked until then, testified that he would have continued to work had it not closed down, and did not file his claim for compensation until some weeks thereafter.

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The case was heard by *Morton*, J.

*J. C. Gahan, Jr.*, (*L. Brown* with him,) for Glenwood Range Company.

*S. B. Horovitz*, (*J. T. Flynn* with him,) for the claimant.

WILLIAMS, J. This is an appeal by Glenwood Range Company, a self insurer, from a decree of the Superior Court awarding compensation to an employee for partial incapacity. According to the findings of the single member, which were adopted by the reviewing board, the employee had been employed by Glenwood Range Company as a molder for about forty-three years, during which time he had been exposed to silica dust. On December 15, 1948, the last day on which he worked, he had inhaled the "maximum amount" of this dust and received "a personal injury arising out of and in the course of his employment . . . namely, a moderately advanced bilateral silicosis." "He is able to do many types of light work but is unable to do the work of a molder." His average weekly wage was $65.59 and his earning capacity in "non-laborious" work is $35 per week. Compensation was awarded by the reviewing board and, on certification to the Superior Court, by a decree of that court at the rate of $25 per week plus $2.50 per week for dependency compensation.

The self insurer contends that there was not sufficient evidence to warrant the finding of the reviewing board. It is settled that findings of fact by the board are final if there is any evidence to support them, *Pigeon's Case*, 216 Mass. 51; *Johnson's Case*, 217 Mass. 388, 390; *Minns's Case*, 286 Mass. 459, 464; *Chapman's Case*, 321 Mass. 705, 707, and cases cited; and cannot be reversed unless required as matter of law. *Johnson's Case*, 258 Mass. 489, 493. *Perangelo's Case*, 277 Mass. 59, 62. *McCann's Case*, 286 Mass. 541, 543.

There was testimony by the employee that he was sixty-two years old and had worked about forty-three years for the

self insurer as a molder. During this period he was subjected to dust. "In his early stage there was more dust than there was the last because they used black lead, lead and charcoal and there was dust all the time, but it was worse at the last of it on account of the dry dust." "Around 1944 or 1945 he began to slow up in his wind." Since 1944 when getting up in the morning "he has hard work to get going, he is all choked up, has to sit around before he can eat his breakfast, cough and get the stuff up." "In the morning he coughs an awful lot, he has to wait to eat his breakfast, he does not eat any breakfast until he gets straightened out, sometimes after he eats his breakfast he coughs and loses his breakfast." He has done no work since December 15, 1948, when the plant shut down. He does not think he is able to do any work. He tried to help out a fellow feeding chickens and could not carry pails of grain, "he got tired, his legs were tired." "He was short of breath, he could not carry." He does not know any trade besides the molder's trade. Assuming the plant shut down on a Thursday, "he would have been back to work Friday but for the fact they shut the plant down . . . if the plant was going . . . he [would] have been working." From December 1 until December 15, 1948, he had shortness of breath. "Asked if he would tell why he worked the last fifteen days there if he had all the trouble he talked about, the witness replied, it had been rumored around there the place was going out of business and he was going to stay to the finish. Asked in spite of the way he felt, the witness replied, yes."

There was medical evidence that the employee had a moderately advanced case of bilateral silicosis. The physician called by the self insurer testified that "both lung fields are filled with medium sized nodularities and there is a dense patch of infiltration at the right base," and that the degree of silicosis which the employee has "is disabling for very heavy work and . . . is disabling for work as a molder." The impartial physician reported that "work which is less laborious than that which he has been doing

can be allowed with safety." There was evidence that the sand with which the employee worked contained seventy-five and sixty-eight one-hundredths per cent silica.

Silicosis, although termed a disease, is traceable to a personal injury within the meaning of the workmen's compensation law. *Panagotopulos's Case,* 276 Mass. 600, 604. The personal injury is caused by the gradual accumulation in the body of harmful foreign matter and, when such accumulation becomes so great that it results in incapacity for work, the injury becomes compensable. *Fabrizio's Case,* 274 Mass. 352, 354. *DeFilippo's Case,* 284 Mass. 531, 533–534. *Crowley's Case,* 287 Mass. 367. *Wnukowski's Case,* 296 Mass. 63. *Gustafson's Case,* 303 Mass. 397. *Duggan's Case,* 315 Mass. 355, 359. The history of his symptoms given by the employee plus the medical evidence justified the finding of the board that the employee had received a personal injury which, on December 15, 1948, had become compensable. *Crowley's Case,* 287 Mass. 367, 373. This injury clearly was of such a nature that it incapacitated the "employee from earning full wages for a period of at least seven days." G. L. (Ter. Ed.) c. 152, § 29, as appearing in St. 1937, c. 382. Although the employee continued to work until the plant shut down and filed no claim for compensation until the following February, these facts were not decisive of the issues as to personal injury and incapacity. In *Gustafson's Case,* 303 Mass. 397, where the employee quit work because there was no further work for him, it was held that the finding that he received a personal injury from silicosis on the date he stopped work was warranted. If the silicosis of the employee had, on the day the plant closed, developed to such a point that the employee was disabled for continued work as a molder, the intention of the employee to keep on working, while material to his belief in his ability to work, did not determine his physical incapacity. See *Anderson's Case,* 288 Mass. 96, 99; *Hunnewell's Case,* 220 Mass. 351, 355. Compensation for partial incapacity may be awarded where the employee is unable to continue his usual work but can perform other labor of a less remuner-

ative kind. *Percival's Case*, 268 Mass. 50, 54. *Biscardi's Case*, 284 Mass. 14, 19–20.

The employee testified that he had applied for unemployment benefits and in his application had said that he was available for work. No evidence was presented, however, that he had received such benefits and on the record the principle of *Pierce's Case*, 325 Mass. 649, does not apply.

Costs under G. L. (Ter. Ed.) c. 152, § 11A, as inserted by St. 1945, c. 444, and amended by St. 1949, c. 372, shall be allowed by the single justice.

*Decree affirmed.*