**HARTFORD ACCIDENT & INDEMNITY CO. v. HOAGE, Deputy Com'r, et al.**

**No. 6651.**

United States Court of Appeals for the District of Columbia.

Decided June 29, 1936.

Cornelius H. Doherty, of Washington, D. C., for appellant.

Leslie C. Garnett, Allen J. Krouse, and Louis Ginberg, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

MARTIN, Chief Justice.

This case arises under the provisions of the District of Columbia Workmen's Compensation Act (Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq. [made applicable to the District of Columbia 45 Stat. 600, D.C.Code 1929, title 19, c. 2, §§ 11, 12, 33 U.S.C.A. § 901 note]). It relates to an award of compensation made to one Leroy Cooley, who met with an injury while employed as an auto wrecker.

The deputy commissioner of compensation awarded compensation to the employee. The insurance carrier, Hartford Accident & Indemnity Company, thereupon filed a bill in the Supreme Court of the District of Columbia to vacate and set aside the award upon the ground that it was not supported by substantial evidence.

The lower court, after a hearing duly had, dismissed the bill. Whereupon, the present appeal was brought by the insurance carrier.

The evidence heard by the deputy commissioner discloses that the employee, Leroy Cooley, male, colored, weight 250 pounds, aged 25, on May 24, 1934, while employed by Robert Herson Auto Exchange, Inc., at a salary of $19.23 a week as an auto wrecker, was lifting a heavy body off a car when his arm "gave way" and he received a strain of the right wrist and hand, and his hand began to pain and swell; that he told his employer of the injury; and that he went to Dr. Becker, the physician furnished by the employer, who treated him on three or four occasions and who discharged him from further treatment about the 30th day of May, 1934, and reported him as able to return to work, advising him if he had trouble to return and see him. That he did not lose any time from work, but that he just loitered around the shop; that his hand was all puffed up and pained him and the condition of his right hand was such that he was unable to use it for the purposes of his work and he worked with his left hand from the time of the injury to the time of the hearing before the deputy commissioner. That he complained of pains in his arm from the time of the injury and he kept his right arm in his overalls or hanging on the side, and that he used his right arm very little to help him push things out of the way; that since the injury he has not been able to get a grip on things as he formerly did with his right hand and that he did not have the strength in his arm that he formerly had. That the nature of his work from May 24, 1934, to January 2, 1935, was of a different and lighter nature, changing batteries and putting gas in cars, but that he received his same and usual pay for doing less work, his employer giving him the same pay "on account of his hand was not good enough for him to work, but he had to live." That from May 31, 1934, to January 21, 1935, he did not go to a doctor but treated the hand himself with liniment and bathed it in Epsom salts; that about January 21, 1935, he contracted a cold and his hand became more swollen and puffed and his hand started bothering him again and he went to Dr. Becker January 28, 1935; that a brace was put on his hand and he returned to work on February 1, 1935, and continued to work until the date of the award, receiving his usual salary of $19.23 a week; that during all of this time he was unable to use his right hand for the purpose of his employment and continued to suffer pain in his arm, which condition existed at the time of the hearing. That Cooley was examined in March, 1935, by a Dr. Walwyn, who stated that Cooley could not use his arm at that time; that he had a sort of dropped wrist which could not be reflexed; that extensor involvements were present; and that there was a marked inability to manipulate and reflex three fingers.

It was conceded that both employer and employee were subject to the District of Columbia Workmen's Compensation Act at the time of the injury; and that due notice of the injury was given to the employer.

After an investigation of the employee's claim the deputy commissioner made an award of compensation wherein he found the facts to be substantially as above set out. The deputy commissioner found that Cooley returned to his usual occupation immediately and continued his work with the use of his left hand, being unable to use the right hand, and that he was given light work by reason of the condition of his injured arm; that he continued to work until about January 11, 1935, when he was compelled to stop work by reason of a cold that he had contracted and that the condition of his hand was aggravated thereby, which aggravation was indicated by swelling; that Cooley worked as a matter of necessity and was paid his usual wages by his employer, but such wages did not fairly represent his wage-earning capacity owing to the fact that he was unable to use his right arm and was suffering from temporary partial disability; that Cooley's weekly wage-earning capacity had been decreased, by reason of his injury of May 24, 1934, and his wage-earning capacity since the said injury was established at 50 per cent. of his earning capacity before his injury, or at $10 per week; that the average weekly wage of Cooley at the time of the injury was $19.23; that the difference between the average weekly wage at the time of the injury and the weekly wage-earning capacity since the injury is $9.23; that Cooley was entitled to compensation at the rate of $6.15 a week beginning May

25, 1934; that compensation had accrued from May 25, 1934 to and including August 15, 1935, a period of 64 weeks, at the rate of $6.15 per week, amounting to $393.60 which amount was due and payable forthwith; that Cooley was further entitled to such medical treatment as the nature of his injury and the process of recovery might require. Thereupon an award was made by the deputy commissioner consistent with the findings above set out.

The applicable section of the compensation act, supra, reads as follows: "(e) Temporary partial disability: In case of temporary partial disability resulting in decrease of earning capacity the compensation shall be two-thirds of the difference between the injured employee's average weekly wages before the injury and his wage-earning capacity after the injury in the same or another employment, to be paid during the continuance of such disability, but shall not be paid for a period exceeding five years." Section 8(e), 33 U.S.C.A. § 908(e).

It appears from the foregoing statements that the employee after the time of his injury received from his employer the same weekly wages as before the injury and that notwithstanding this fact the deputy commissioner awarded the sum of $6.15 as weekly compensation to be paid to the employee as the amount of his temporary partial disability resulting from the injury.

The contention of the appellant based upon this circumstance, as stated in its brief, is as follows: "It is not contended here that the appellee Leroy Cooley did not sustain an injury at the time testified to by him, but it is contended that the employer, Robert Herson Auto Exchange, Inc., paid to Leroy Cooley his full salary during the entire period of time that he alleges he was disabled, and that there is no testimony to show a loss of earning capacity. Had Leroy Cooley remained away from work, and the finding was made by the deputy commissioner that he received a temporary partial disability in the amount of fifty per cent of his earning capacity, then all the employer or its insurance carrier would have to pay would be six dollars and fifteen cents ($6.15) per week in accordance with this award, but under the award as it now stands the appellee Leroy Cooley would receive his full wages of nineteen dollars and twenty-three cents ($19.23) a week, plus an additional six dollars and fifteen cents ($6.-15), making his earning capacity twenty-five dollars and thirty-eight cents ($25.-38) a week instead of nineteen dollars and twenty-three cents ($19.23), as the evidence showed."

We do not agree with these conclusions of the appellant. The fact that Cooley's employer continued to pay him the sum of $19.23 per week for his wages while suffering from his injuries does not prove that his wage-earning capacity was not diminished by his injury. The employer evidently continued to pay the full amount of Cooley's former salary to him after his injury, not because his wage-earning capacity continued the same, but upon the ground that this amount was needed by Cooley because "he had to live."

The fact that Cooley because of these circumstances may receive $25.38 per week, a sum in excess of his former wages, does not add to the liability of the insurance carrier who is called upon to contribute only the sum of $6.15 a week, being the sum established as the decrease of earning capacity of Cooley as defined by the statute. Accordingly, the apparently excessive sum which Cooley may receive because of the payment of his former wages by his employer imposes no increased burden upon the carrier. The converse of this situation appears in cases where the injured employee entirely discontinued work, although sustaining but a partial injury. In such cases the insurance carrier is held to contribute only the decrease in the wage-earning capacity of the injured employee and no more. In both illustrations the injury is compensable and the carrier is compelled to pay only the decrease in the working capacity of the employee regardless of whether during the period he earns as much as his former wages, or earns nothing whatever.

It is established by the authorities that the payment of a greater sum than the wage-earning capacity of an injured employee after the injury does not deprive him of a recovery of compensation under section 8(e), supra.

In Hurwitz's Case, 280 Mass. 477, 182 N.E. 832, 833, the court said: "The circumstance that the employer paid the employee the same wages after he returned to work as he had received before he was injured because the employee had been in-

jured on the employer's premises and he felt morally obligated to do what he could for him is not necessarily inconsistent with the finding of partial incapacity."

In Roller v. Warren, 98 Vt. 514, 129 A. 168, 170, the court, referring to an argument similar to that of the appellant in this case, said: "Their [defendants] argument is that a workman cannot be totally disabled for work when he can get employment and perform the duties thereof. The weakness of the argument is that it gives conclusive effect to the single circumstance that the workman performs some service for pay and wholly disregards the question of the fitness of the service to his impaired condition and his capacity to perform the same."

In Postal Telegraph Cable Co. v. Industrial Acc. Comm. of California, 213 Cal. 544, 3 P.(2d) 6, 8, the court, after reviewing the authorities, stated: "We are of the view that it definitely appears from these cases, which indicate the trend of judicial decision, that the right to compensation is not lost or diminished by the injured employee's return to work at the same or a different wage than that theretofore earned by him."

See, also, Case of Clark, 120 Me. 133, 113 A. 51; Williams Co. v. Industrial Comm., 303 Ill. 352, 135 N.E. 758; Frankfort General Ins. Co. v. Pillsbury, 173 Cal. 56, 159 P. 150; Harvey v. Eldridge & Majors Packing Co., 128 Kan. 403, 278 P. 16; De Zeng Standard Co. v. Pressey, 86 N.J. Law, 469, 92 A. 278; Dragon's Case, 264 Mass. 7, 161 N.E. 816; Hartford Accident & Indemnity Ins. Co. v. Miller (Tex.Civ. App.) 5 S.W.(2d) 181; New York Indemnity Co. v. Industrial Comm. of Colorado, 86 Colo. 364, 281 P. 740; Allen v. Kansas City Fibre Box Co., 122 Kan. 178, 251 P. 191; Schneider's Workmen's Compensation Law, vol. 11 (2d Ed.) p. 1341.

In answer to the impressive array of authorities sustaining the present award the appellant cites only three cases, to wit, New York Central R. Co. v. White, 243 U.S. 188, 202, 37 S.Ct. 247, 61 L.Ed. 667, L.R.A.1917 D, 1, Ann.Cas.1917D, 629; Weber v. American Silk Spinning Co., 38 R.I. 309, 95 A. 603, Ann.Cas.1917E, 153; and Candado Stevedoring Corporation v. Locke (C.C. A.) 63 F.(2d) 802. An examination of these cases discloses that the first has no relation whatever to the present issue, and that the second and third contradict in

principle the argument advanced by appellant.

The evidence before the deputy commissioner clearly sustains his conclusion that the wage-earning capacity of the employee in this case was diminished by reason of the injuries sustained by him in the course of and arising out of his employment; and the amount of the employee's disability as fixed by the deputy commissioner is likewise consistent with the testimony. The decree of the lower court is therefore affirmed.

Affirmed.