UNITED ENGINEERING CO. et al. v.
PILLSBURY, Deputy Commissioner.

MATSON TERMINALS, Inc. et al. v. PILLS-
BURY, Deputy Commissioner.

UNITED ENGINEERING CO. et al. v.
CYR, Deputy Commissioner.

Nos. 28735, 28810, 29058, 29292.

United States District Court
N. D. California, S. D.

May 10, 1950.

John H. Black, Edward R. Kay, San Francisco, Cal., for plaintiffs.

Frank J. Hennessy, U. S. Atty, Edgar R. Bonsall, Asst. U. S. Atty., Macklin Fleming, Asst. U. S. Atty., all of San Francisco, Cal., for defendants.

GOODMAN, District Judge.

In these four consolidated actions, the plaintiff employers and their respective insurance carriers have asked this court to set aside and enjoin the enforcement of Compensation Orders and Awards made by the Deputy Commissioner pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S. C.A. §§ 901–950. The question presented is whether the Deputy Commissioner lacked jurisdiction to make the awards because the claims for compensation were not filed within a year after the claimants were injured as is allegedly required by Section 13(a) of the Act. The Deputy Commissioner has moved to dismiss the complaints on the ground that the claims were timely filed and that therefore the awards were proper.

Section 13(a) of the Act provides that *"The right to compensation for disability under this chapter shall be barred unless a claim therefor is filed within one year after the injury,* and the right to compensation for death shall be barred unless a claim

therefor is filed within one year after the death, except that if payment of compensation has been made without an award on account of such injury or death a claim may be filed within one year after the date of the last payment. Such claim shall be filed with the deputy commissioner in the compensation district in which such injury or such death occurred." (Emphasis added.)

For a proper understanding of the issues presented, a brief account of the injuries suffered by the claimants and the events leading up to the compensation awards is here necessary.

Claimant Howard Johnson on May 12, 1947 struck his head on a cross-beam of the vessel Monterey while working as a leaderman welder. The muscles of his neck were severely strained and he was unable to continue to weld aboard ship. His employer transferred him to lighter work in the machine shop at no reduction in wages. Although his neck continued to trouble him, he continued to work regularly for more than a year until he was discharged by the new owner of the ship yards because he was unable to weld aboard ship. Since that time he has been employed only intermittently because he is physically able to perform only the less strenuous types of welding operations. When Johnson first lost time from work, he was told it was too late for him to file a claim for compensation. But when he discovered how many employment opportunities were lost because of his condition, he decided to attempt to secure compensation. On January 31, 1949, more than a year and a half after the accident, he filed his claim with the Deputy Commissioner.

Claimant Frank Curnutt on February 17, 1947, while employed as a sheetmetal worker aboard the S. S. Lurline, wrenched his back when he lifted a pre-heater from the deck to a table. He did not work for several days. When he returned to his job, he was relieved of all heavy work on doctor's orders. With some discomfort, he performed lighter duties at his former wage rate until his job ended in about a year. After resting for two weeks to give his back a chance to heal, he obtained work with the Bethlehem Steel Company. In June of

1948 he quit work for five weeks, as a therapeutic measure suggested by his physician. In July he went to work for a sheet-metal company, but soon was forced to give up this job, and subsequent ones, because the work proved too strenuous. On January 17, 1949, nearly two years after injuring his back, Curnutt filed his claim for compensation.

Claimant Louis Shallat on November 21, 1947, while working as a stevedore aboard the S. S. Mauna Lei, caught his hands between a sling and a bight. Considerable pain and swelling in his hands resulted. According to Shallat, his left hand has pained him continuously since it was injured and he has applied self-treatment. While he testified at the hearing before the Deputy Commissioner that the injury grew "more and more severe," he also stated that "the left hand is still the same as it was when I got injured." Shallat had lost no time from work up to the date of the final hearing before the Deputy Commissioner. At that hearing, Shallat stated that he did not file his claim for compensation until May 23, 1949, nearly a year and a half after he was injured, because he thought the injury "wasn't so serious," and that "it would work its way out."

Claimant Chris Manos was welding on the deck of the tanker Purisima on December 22, 1947 when he was struck on the head by an iron saddle falling from above. He was instructed by the examining physician not to weld thereafter and consequently was given lighter work by his employer. He suffered no reduction in rating or wages. About two months later his employment terminated as a result of a general reduction in the number of men employed at the ship yard. In a week or so he obtained a shop welding job at a slightly higher wage than he had previously received at the ship yard. This job ended in January of 1949 due to a general lay off. At the time of the hearing before the Deputy Commissioner on August 29, 1949, Manos was still unemployed, but was planning to engage in sales work. Manos' neck has troubled him continually since he was struck on the head and he has received regular medical treatment. In some respects

the condition of his neck apparently gradually has improved and in others it has grown worse. Manos filed a claim for compensation on August 17, 1949, more than a year and a half after he was injured.

The Deputy Commissioner justified his awards to these claimants and now grounds his motion to dismiss these complaints on his conclusion that Section 13(a) of the Compensation Act sets the one-year period of limitation running, not from the date of injury, but from the date on which the injury became compensable. There may be merit to this interpretation of Section 13(a) but these causes can be determined without reaching the question.

■ In my opinion, the Deputy Commissioner erred in assuming that the injuries suffered by these claimants were not compensable so long as they continued to work with no reduction in wages. It is now settled law in this Circuit that a claimant is *not* precluded from recovering compensation under the Act because he has been paid his old wages at all times since resuming work after being injured. Twin Harbor Stevedoring & Tug Co. v. Marshall, 9 Cir., 1939, 103 F.2d 513. Accord, Luckenbach S. S. Co. v. Norton, 3 Cir., 1938, 96 F.2d 764; Hartford Accident & Indemnity Co. v. Hoage, 1936, 66 App.D.C. 163, 85 F.2d 420. The Act says nothing about "compensable injuries" but only provides that compensation must be paid for disability. Disability is defined by Section 2(10) as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." The statute makes *earning capacity* the test. Earning capacity may be properly defined to mean ability to earn, rather than wages actually received. And this means ability to earn in the open labor market, not ability to secure exceptional consideration from a sympathetic employer.

Although their employers did not reduce their wages, claimants Johnson, Curnutt, and Manos were physically unable, following their injuries, to perform the same duties they had previously performed. Pain and suffering were continuous. They were well aware that unless there was improvement in their physical condition, they would be unable to again engage in strenuous activity. Claimant Manos admitted that he was told by the physician, who examined him following his injury, that he could obtain compensation. Instead of doing so, at the same physician's suggestion, he sought and obtained from his employer lighter work at his former wages.

■ Claimant Shallat apparently continued to perform the same duties following his injury as he had before. But, if his statements to examining physicians are accepted as true, he was in constant pain. The Compensation Act does not deny relief to an injured workman until his pain exceeds endurance.

■ All four of the present claimants have been disabled within the meaning of the Longshoremen's and Harbor Workers' Compensation Act since the day they were injured. Consequently they had compensable claims.[1] Such claims were not timely filed. It follows that the awards of the Deputy Commissioner were not within his power to make. The court is aware of the well established rule that the Deputy Commissioner's findings of fact should not be disturbed if there is any substantial evidence to support them. But his conclusion that these claimants suffered no disability until long after they were injured is based on an error of law. The undisputed factual record shows that the earning capacity of these men was impaired from the time of injury.

The delay in the filing of these claims is wholly understandable. None of these claimants appear to have been fully aware of his rights and obligations under the Compensation Act. And, even had these men realized the consequences of delay, it is only natural that they should hesitate to jeopardize their opportunity to continue working at their former wage rate by pressing claims for compensation. In a relatively short time the wages of these

---

1. See Liberty Mutual Insurance Co. v. Parker, D.C.Md.1937, 19 F.Supp. 686, in which the same conclusion was reached on somewhat similar facts.

claimants would have equaled the maximum awards they could ever hope to receive. These, however, are considerations for the lawmakers and not for the Courts.

The motions to dismiss are denied and the awards are severally set aside and vacated.[2]

2. The above order in fact fits the issues raised by the pleadings. But in order to technically comply with the rule announced by our Court of Appeals in Twin Harbor Stevedoring & Tug Co. v. Marshall, supra, the causes are transferred to the Admiralty docket, the motions will be treated as exceptions and are overruled and a decree will enter vacating and setting aside the awards.