GEORGE DIMITROPOULOS'S CASE.

Suffolk.    October 4, 1961. — December 15, 1961.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Workmen's Compensation Act,* Reviewing board, Reservation of rights, Continuing compensation, Incapacity. *Error,* Whether error harmful.

After a single member of the Industrial Accident Board in a workmen's compensation case had awarded compensation for incapacity to a specified date, finding that any incapacity of the employee thereafter was unrelated to any injury arising out of and in the course of his employment, it was within the power of the reviewing board, while affirming such award of compensation, to modify the single member's decision "by specifically reserving the employee's rights to further compensation" after the specified date, with the result that there was no final determination of cessation of all incapacity and the case was left open for further consideration of the matter of incapacity.  [344]

A finding by the Industrial Accident Board in a workmen's compensation case, that the employee, who had only one eye and had suffered a detached retina in that eye through an injury while at work, was, after a successful corrective operation, able to do his regular work again "but with the possibility of another accident if he over-exerted," did not preclude a further finding on adequate medical evidence that he nevertheless was partially incapacitated and entitled to compensation accordingly in that, in view of his having had a detached retina in his only eye, performance of his former regular work, of a heavy nature, would involve "physical danger" to that eye and should be avoided and that he was therefore restricted to light work not likely to reinjure it.  [344–346]

Prejudicial error was not shown in a workmen's compensation case by exclusion of certain questions asked by the insurer in cross-examination of the employee's medical expert where later the insurer elicited from the witness certain testimony to which nothing would have been added by answers to the excluded questions.  [346]

CERTIFICATION to the Superior Court of a decision by the Industrial Accident Board under the workmen's compensation act.

The insurer appealed from a decree by *Spring,* J., in accordance with the board's decision.

*Edmund Z. Dymsza,* for the insurer.

*Sumner W. Elton,* for the employee.

SPALDING, J.   More than twenty years ago the employee was involved in an accident (which need not concern us), as a result of which his right eye was enucleated.   On August 24, 1957, while in the course of his employment with the Worcester Stamped Metal Company, he received a blow on the head.   Shortly thereafter his vision in his left eye became impaired and a medical examination revealed that he had a detached retina.   On September 7, 1957, an operation was performed to remedy this condition; as a result "vision was 20/30, corrected, the retina was in situ and the eye looked very good."   The only impairment in vision after the operation was the result of a preexisting cataract which was in no way related to his injury on August 24.   After finding the foregoing facts, the single member found that the employee was totally incapacitated from September 3, 1957, to January 27, 1958, and partially incapacitated from January 28, 1958, to March 31, 1958, and awarded total and partial incapacity compensation respectively for these periods.   With respect to the period following March 31, 1958, the single member found that the employee's "incapacity . . . if any, was due to a cataract condition, which is not related to any injury arising out of and in the course of his employments."

The reviewing board, with a modification presently to be mentioned, affirmed the findings of the single member and the awards of compensation made by him.   With this portion of the board's decision we are not concerned.   The board modified the decision of the single member "by specifically reserving the employee's rights to further compensation following March 31, 1958, when they were terminated by the single member."   There was no appeal from this

decision. This modification by the board is now challenged by the insurer.

Pursuant to the modified decision a second hearing was held before another single member. The insurer contended before the single member, without success, that the board was without authority to reserve the employee's rights to compensation for the period subsequent to March 31, 1958. The second hearing was limited to the issue of impairment of earning capacity subsequent to March 31, 1958. The single member found that the employee failed to establish any causal relationship between the injury of August 24, 1957, and any alleged disability subsequent to March 31, 1958. This finding was based on medical evidence that "by an operation performed . . . in 1957 the employee enjoyed sight and function of the left eye as good as before the injury and that he could do his regular work but with the possibility of another accident if he over-exerted." The single member, accordingly, denied compensation.

The reviewing board affirmed the decision of the single member to the extent that he adopted the testimony, quoted above, of the medical expert. But the board modified the single member's decision "wherein he finds no further disability related to the employee's injury . . . [after] March 31, 1958." Continuing, the board found in accordance with the testimony of a qualified ophthalmologist that "since the employee had a detached retina in his only eye . . . he should avoid doing heavy work and work of the nature . . . he was performing at the time of his injury . . . because of the physical danger that might result to this eye in performing work of a heavy nature." Concluding, the board found that "since this employee because of the injury to his left eye is restricted to doing work of a light nature and of a type not likely to reinjure . . . [that] eye . . . his earning capacity, because of his restriction to such types of work, is reduced." The board awarded partial incapacity compensation from March 31, 1958; it also overruled certain exceptions by the insurer to the single member's rulings on evidence.

Upon certification to the Superior Court by the insurer a decree was entered in accordance with the board's decision. From this decree the insurer appealed.

1. The insurer argues that the reviewing board's first decision "to reserve to the employee rights to further compensation following March 31, 1958," was erroneous because the Industrial Accident Board is "a tribunal of limited jurisdiction" with no power to reserve an employee's rights. We find no merit in this contention. "The findings, rulings and decision of the reviewing board entirely superseded the action taken by the single member, which thereafter became of no importance." *Di Clavio's Case,* 293 Mass. 259, 261. Under the board's decision, which thereafter was controlling, the employee's rights to further compensation were explicitly reserved. There was, therefore, no final determination that all incapacity had ceased. On the contrary the plain intent of the reservation was to leave the case open for further consideration and award if an incapacity should later be established. That this may be done we have no doubt. *Hunnewell's Case,* 220 Mass. 351, 353–354. *Weir's Case,* 252 Mass. 236. *Hanson's Case,* 264 Mass. 300, 302.

2. The insurer earnestly contends that the reviewing board's finding of partial incapacity in its second decision was erroneous. This finding was based on other findings to the effect that the employee, because of the injury to his left eye, is restricted to doing work of a light nature and of a type not likely to reinjure that eye. There was evidence which warranted this finding.[1] The finding of the single member, adopted by the board, that the employee's sight was "as good as before the injury and that he could do his

[1] Dr. Yasuna, an ophthalmologist, testified: "My opinion is that an individual such as this who has had [a] detached retina which has been operated [on], in this case relatively successfully, should not engage from then on in any heavy work whatsoever. . . . Any patient who has had a retinal detachment should be limited to light work . . . . The reason for saying that is [that] the patient has had a retinal detachment and is prone to have another detachment which can certainly be brought on more so by having a strain, heavy lifting or further injury to his eye or head. . . . The possibility of a recurrence in an only eye is even higher than 25%, maybe as high as 50% if exposed to heavy lifting work."

regular work, but with the possibility of another accident if he overexerted," did not, as the insurer contends, compel a finding of no incapacity on the ground that the employee is physically able to do his former work. We hold that a finding of partial incapacity is warranted where an employee, under competent medical advice, refrains from engaging in his former work because of the considerable risk of reinjury, and pursues less remunerative work in order to avoid that risk. See *Davis's Case,* 304 Mass. 530, 534–535.

There appear to be no Massachusetts decisions precisely on this point, but it has been considered elsewhere. The case of *Williams* v. *Lancasters Steam Coal Collieries, Ltd.* 33 B.W.C.C. 75, involved a claim for partial compensation under the English Workmen's Compensation Act by a hewer who had been afflicted by a disease called miner's nystagmus, but who no longer suffered from the symptomatic attacks. The medical evidence showed that if the employee returned to the mines his nystagmic attacks would soon reoccur. It was held that the employee was not fit for work underground and that he was therefore subject to a partial incapacity compensation. In the course of its opinion the Court of Appeal quoted with approval the following statement of Moulton, L.J., " 'I think I ought to add that in my opinion you cannot consider an employment suitable that a reasonably careful man desirous of earning his living is entitled to reject because it exposes him to risks so serious in their consequences that he feels he is not doing his duty to himself and his family in encountering them' " (p. 81). In at least one American jurisdiction this problem has arisen, and the decisions are in harmony with the English view. See *Matter of Adamsbaum* v. *Broadway Health Club,* 271 App. Div. (N. Y.) 576; *Matter of Cutting* v. *Hewitt Rubber Co.* 274 App. Div. (N. Y.) 1080, affd. 300 N. Y. 598 (without opinion); *Matter of Burley* v. *American Locomotive Co.* 2 App. Div. 2d (N. Y.) 621; *Matter of Andrias* v. *Ryan-Turecamo, Inc.* 12 App. Div. 2d (N. Y.) 534.

In view of the medical testimony in the present case and the serious consequences (total blindness) which might

reasonably ensue if the employee resumed his former type of work,[2] we cannot say that the board erred in awarding partial incapacity compensation.

3. Numerous exceptions to rulings on evidence were taken by the insurer but only two need be considered, as the remainder have not been argued. The following questions put by the insurer in the cross-examination of Dr. Yasuna, the employee's medical expert, were excluded. "Q. And so it really becomes quite speculative when and how . . . [the employee] might further injure that eye by physical exertion? Q. Actually, what would or would not happen under any given set of circumstances right now is in the realm of speculation, isn't it?" If, as we do not decide, the exclusion of these questions was error, it was not prejudicial. Shortly after these questions were excluded, counsel for the insurer elicited the following testimony from Dr. Yasuna: "What would or would not happen to this man if he indulged in heavy work we have no way of knowing." Answers to the excluded questions could have added nothing.

4. The final decree is affirmed. Costs of the appeal are to be determined by the single justice.

*So ordered.*

---

[2] In *Eyre* v. *Houghton Main Colliery Co. Ltd.* [1910] 1 K.B. 695, 700; 3 B.W.C.C. 250, 257, Moulton, L.J., recognized that the seriousness of the consequences of the injury to be risked if the employee were to return to his former work was an important factor to be considered, and said: "Let me give an example. Suppose it was a question of exposure, and the exposure was such as a healthy man might bear, but by reason of the accident a man had developed a delicacy of the lungs, he would have a special right to say: 'The risk of exposure is one which a healthy man might bear because it would only be a question of cold, or at the worst a little bronchial attack in his case, but in my case it probably would be death, and therefore I decline to take that employment because in my condition it is not suitable.'"