Fecteau, J.
This is an action brought by the plaintiff under the provisions of G.L.c. 32, §85H, by which he seeks a determination that he is totally and permanently disabled from his regular employment as a result of a workplace injuiy as a call firefighter. The defendants contend otherwise, saying that there has been no significant change in his physical condition and ability since a prior trial at which he was found not to have been disabled.
*443 This matter came before me, sitting without jury, on April 1, 2004. The parties were given leave to file requests for findings of fact and rulings of law by April 12, 2004, whereupon the case was taken under advisement. Upon consideration of the evidence, the following findings of fact and rulings of law are made.
FINDINGS OF FACT
1. The plaintiff, Charles F. Dyer (“Dyer”) was bom on December 9, 1941. He began as a call firefighter for the Town of Lunenburg in 1958. In December 1958, at the age of 17, Dyer responded to a fire call. Upon entering the firehouse, he slipped and fell injuring his right hip. That injury required surgery and the placement of a pin in his right hip. The plaintiff continued to respond to calls as a firefighter over the next several years.
2. In March of 1986, during the course of answering a fire call, Dyer slipped and fell at the Lunenburg firehouse injuring his right hip. After continued pain, he consulted his doctor about the injury and a course of conservative treatment was ordered. Approximately one year later, on March 10, 1987, and as a result of the accident, the plaintiff had bi-polar replacement surgery of his right hip performed by Dr. Steven A. Manalan. The issues of whether the accident was causally related to the initial injury and whether the accident was due to any fault of the plaintiff has been fully litigated and established within the first judicial proceeding, in which it was found that both of the accidents that Dyer suffered as a call firefighter were found to have been causally related to his initial injury and were not due to his fault.
3. On March 10, 1987, the Board of Selectmen of the Town of Lunenburg voted to provide injury leave benefits to Dyer pursuant to c. 32, §85H. He has not worked in his regular occupation, that of an outside salesman/manufacturer’s representative, since March of 1986, nor has Dyer returned to work as a call firefighter for the Town of Lunenburg. The plaintiff has been entitled to receive Social Security Disability Insurance benefits since March of 1986, pursuant to a decision of the Social Security Administration on February 26, 1990, that found him permanently disabled. He has had no interruption in benefits since that time.
4. In January of 1989, the Board requested an independent medical examination of the plaintiff which was performed by Dr. Marvin Baum on January 19, 1989. In a report to Lunenburg’s Executive Secretary dated January 19, Dr. Baum stated that Dyer was able to perform light duty assignments previously identified and listed by Lunenburg Fire Chief, Denis Carrier, as available in the Fire Department. Based on that medical report, the Board ordered Dyer to return to work at the firehouse. He did not report to work then or at any time since, whereupon the Board terminated disability benefits. Thereafter, the plaintiff filed an action against the Town of Lunenburg (C.A. No. 89-1078) for benefits related to the same injury and the matter was tried in the Worcester Superior Court.
5. After a non-jury trial, a decision was entered on December 7, 1990, in favor of the defendants, finding that the plaintiff could perform the duties of his regular occupation.[1] The decision of the trial court was affirmed on appeal. See Dyer v. Board of Selectmen of Lunenburg, 34 Mass.App.Ct. 606 (1993) (“Dyer 7”), issued on June 18, 1993.
6. Mr. Dyer’s regular occupation in March of 1986 was that of outside salesman/manufacturers representative. Mr. Dyer’s usual duties as outside salesman/manufacturers representative were as follows.
a. Coverage of an 11 state area by automobile and airplane, wherein he would typically drive 50,000 miles per year;
b. Sales of products to the furniture and cabinet industry (including hardware, laminates and laminated board products); and
c. Driving long distances, standing for long hours at trade shows and performing office work to support these activities. In addition, the plaintiff customarily carried 3 sample cases, each typically weighing 35 pounds, to his sales calls. These sample cases contained samples of hardware and other items. Mr. Dyer would typically use both arms in order to carry these sample cases.
7. While Dyer’s last occupation was as a salesman, that employment ended in March 1986 and Dyer never worked after that date. He testified at trial in Dyer I that he had been given notice in November 1985, that his job was to end in 120 days. From then until March 1986, he had not found new employment.
8. Dyer testified during the first trial of his case. He also introduced 17 reports from, and the videotape deposition of, his then attending physician, Dr. Steven Manalan. The Town introduced testimony by Brian LeBlanc, another call firefighter for the Town.
9. In its 1990 decision, the Court made the following findings.
(a) Since Dyer’s 1986 accident, Dyer had demonstrated a capacity for physical tasks, including extensive videotaping of fire scenes. In order to accomplish the videotaping, at the sound of the alert, the plaintiff had driven to the fire station, ascended a flight of stairs with the video camera and arrived at the scene, often before the fire trucks. The videotaping required squatting, climbing and traversing difficult terrain. In addition, Mr. Dyer had jumped off a fire truck, climbed flights of stairs, shoveled snow, pushed a snow blower, spread lime on his grass, maintained his lawn and had climbed ladders up to the roofline of his rental property. The plaintiff had participated at a town fair at which he remained standing for 3 hours while selling tickets.
*444 (b) Dyer’s ability to perform the activities was consistent with his physician’s objective medical examination of the plaintiff, but was inconsistent with Dyer’s subjective complaints. The objective physical examinations show that the hip surgery properly healed. This was based upon evidence to the effect that Dr. Manalan had found, according to the objective findings, the hip replacement had reached a medical end result and that, beginning in November 1988, and continuing until the trial of this matter in November 1990, the essential complaints presented by Dyer were subjective, rather than objective in nature. In June 1989, Dr. Manalan referred Dyer to Dr. Lehndorff, a pain specialist. In Dr. Manalan’s view, no further surgical treatment was necessary or appropriate, and the right hip replacement had been successful from a surgical perspective. Dyer had been directed to increase his physical exercise program which he appeared to have done, but did not take advantage of a referral to an in-patient pain-management clinic. From March 20, 1989 to November 8, 1990, the date of the first trial for this matter, Dr. Manalan examined Dyer on four occasions. During this time, no further treatment was rendered to Dyer with regard to the hip replacement.
10. Thus, as of the findings of fact and the entry of judgment in December 1990, Dyer was unemployed and he has not worked subsequent to the time by which the Court in Dyer I had found him able to engage in his regular occupation. Dyer was not working at all on January 7, 1991. He did not have an occupation that was a substantial source of income on January 7, 1991. Dyer has not had any occupation that provided a substantial source of income since March 1986. Dyer did not look for a job between December 8, 1990 and January 7, 1991. In fact, he has not made any job search efforts since 1987. He did not go on any interviews after 1987. He did not apply for any positions as a salesman. He has not been involved in that trade since 1986.
11. On September 1, 1993, three months after the Appeals Court affirmed the trial court decision, Dyer filed a second claim for benefits, alleging that his condition had “sharply deteriorated” after the December 7, 1990 decision such that he was completely disabled by January 7, 1991, exactly one month after the trial court decision.
12. Dyer did not see his physician between December 7, 1990 and January 7, 1991, the period when his condition allegedly “sharply deteriorated.” Dyer’s first appointment with Dr. Manalan after the trial court decision was on January 7, 1991. This was a regularly scheduled appointment, arranged prior to December 7, 1990, for periodic review; as of January 1990, Dr. Manalan had determined that he only needed to see Dyer for yearly reviews because he believed that Dyer had reached a plateau and had no reason to see him monthly or bi-monthly.
13. On January 7, 1991 Dr. Manalan reported that Dyer was “not much improved over his previous examination,” and that Dyer walked without a limp with excellent range of motion. This was similarly noted in his report from August 8, 1990. As a result of his examination of January 7, 1991, Dr. Manalan was not of the opinion that surgery was necessary or recommended.
14. In 1993, Dyer had a second hip replacement surgery. Both Dr. Manalan and Dr. Harris refused to perform this surgery because they did not believe it would be beneficial. Dr. Harris felt that Dyer’s pain pattern was unusual and that Dyer had substantial secondary gains from continuing to have the pain. This court infers from such references, including Dr. Asher’s discussion of Dr. Harris’s findings in his testimony including such references to secondary gain, as an acknowledgment and finding that the plaintiff was motivated and influenced by his interest in the outcome of litigation.
15. There was no change in Dyer’s condition after the surgery. He believes that it was no help at all. Even his level of pain remained the same after the surgery. Moreover, Dyer’s own physician, Dr. Asher identified no change in Dyer’s medical condition after the 1993 surgery. Dr. Asher stated in 1997 that in the past 10 years his reports of pain have remained exactly the same. The atrophy in Dyer’s right leg was 1 inch prior to December 1990 and remained 1 inch in July 2003. The opinion by the defendant’s expert in orthopedics, Dr. Michael Kennedy, that the amount of atrophy would increase if the plaintiff was experiencing an increase in pain and a decrease in activity is credited. Dr. Kennedy opined, which this court accepts, that if Dyer was in as much pain as he claimed, over the course of 17 years, causing him to favor his right leg, the leg would show significant atrophy, approaching 30-40%, when compared with the left leg. Dyer’s right leg is only 1 inch smaller than his left, representing only an approximate 5-6% reduction in size. Moreover, the objective medical evidence does not support the plaintiffs claim that he currently spends 18 to 20 hours per day lying down, as he had for the last 17 years. If he had done so over as long a period of time as he suggests, osteoporosis would be evident by x-ray; his are negative for osteoporosis.
16. There has been no change in Dyer’s medical condition since December 7, 1990. Dr. Asher admits that Dyer still has a full range of motion, that Dyer does not have any mechanical problem and that his problem relates solely to the pain he experiences. Dr. Asher also admitted on cross examination that this determination of pain is based solely upon the subjective complaints of the plaintiff. Finally, he gave no testimony to show that Dyer’s medical condition or limitations are any different than they were prior to 1991. Dr. Asher has recommended that Dyer control the pain with medication. Dr. Asher has prescribed *445 several different types of narcotic pain medication for Dyer which he refuses to take. He claims that some of these make him “spacey” and light headed. Dyer prefers to lie down as a treatment for pain. The medications Dyer apparently takes are mind-altering drugs and not traditional pain medications.
17. There has been no substantial change in Dyer’s subjective complaints of pain or physical limitations. Dr. Asher testified that Dyer used to be able to do activities for three to four hours and can now only do activities for 1-2 hours. However, Dyer admitted on cross examination that he had claimed that he could only do activities for 1-2 hours prior to 1990 as well. Dyer is still able to do today the same activities that he did prior to December 7, 1990, including the videotaping of fires, standing for periods of time up to three hours, climbing ladders, snowblowing his driveway, performing yard work.
DISCUSSION
The issue of whether the Plaintiff is entitled to compensation under G.L.c. 32, §85H (“85H”) arising from an injury sustained March 23, 1986 as a call firefighter has previously litigated to a final judgment. Dyer v. Board of Selectmen of Lunenburg, 34 Mass.App.Ct. 606 (1993). In that case, the Appeals Court affirmed the decision of the Superior Court[2] which had found Dyer ineligible for compensation under §85H because he was “capable of performing his regular employment of a sales person.” Id. at 608 n.4 (quoting Dyer v. Town of Lunenburg, Civil No. 89-1078 (Worcester Super.Ct., Dec. 7, 1990) (Donohue, J.) {“Dyer F). This decision is res judicata, and whether Dyer was able to perform the usual duties of his regular occupation from March 23, 1986 to December 7, 1990 may not be re-litigated. Montana v. United States, 440 U.S. 147, 153 (1979) (“Afundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . .”) (internal quotations omitted), quoted in Fidler v. E.M. Parker Co., 394 Mass. 534, 539 (1985). However, this court has also found, as a matter of issue preclusion, whether the accident was causally related to the initial injury and whether the accident was due to any fault of the plaintiff are issues that have been fully litigated in the first trial and determined in the plaintiffs favor.[3]
Here, the Plaintiff contends that, subsequent to Dyer I, he suffered a substantial deterioration in his physical condition that is causally related to the original March 23, 1986 injury, such that he is now permanently disabled and entitled to bring a new cause of action. Already decided as a matter of law on cross motions for summary judgment is that a plaintiff may bring a second claim for compensation under 85H if the second claim is causally related to the original injury incurred during performance of plaintiffs public duty and shows a significant change in the plaintiffs medical condition.[4] That a plaintiff may bring a second claim for 85H compensation following an initial denial is supported by a plain reading of 85H and is in substantial conformity with analogous case law under the Workers’ Compensation Act. See, e.g., In re McEwen’s Case, 369 Mass. 851, 853-55 (1976); Foley’s Case, 358 Mass. 230, 232 (1970); Dimitronoulos’s Case, 343 Mass. 341, 342-44 (1961); Mulkern’s Case, 274 Mass. 69, 74 (1931); cf. Hummer’s Case, 317 Mass. 617, 620-22 (1945).
In re McEwen’s Case is particularly instructive. See 369 Mass, at 853-55. In that case, plaintiffs claim for total and permanent disability benefits was denied by the Industrial Accident Board (“Board”) on the ground that his workplace injury had not left him totally and permanently disabled. Id. at 853. Plaintiff then filed a second claim for benefits, alleging that subsequent to the denial, his condition had deteriorated further. Id. In upholding the Board’s award upon the second claim, the Supreme Court ruled that “there was evidence on which the board could properly decide that . . . his condition had changed between . . . the date of the prior evidentiary hearing where he was found not to be permanently and totally disabled, and . . . the date on which evidence was heard in the present case.” Id. at 854 (citation omitted). Accordingly, the Court held that “the fact that the board had found the employee ineligible for benefits in a prior proceeding does not preclude a finding of total and permanent disabilily at a later date if the board finds the evidence of a progressively worsening condition to be more compelling than the evidence presented in the past." Id, at 855 (emphasis added).
In the present case, however, there is no credible evidence of a progressively worsening condition. Plaintiffs complaint alleges that since the time of Dyer I, December 7, 1990, his condition has “sharply deteriorated” so that he was, as of January 7, 1991, and no longer is, able to perform the usual duties of his regular occupation. The court has heard no credible evidence to support this assertion. To the contrary, the evidence supports an ultimate conclusion that Dyer’s condition is substantially the same as it was on December 7, 1990. The court highlights some specific findings of fact, see supra, that support this conclusion: (1) Dyer did not see his physician, Dr. Manalan, between December 7, 1990 and January 7, 1991, the period when his condition allegedly deteriorated; (2) on January 7, 1991, Dr. Manalan noted that Dyer was able to walk without a limp and with excellent range of motion; (3) from the testimony of Dr. Asher, a surgeon retained to perform a hip surgery Dr. Manalan refused to perform, it is found that Dyer does not have any mechanical problem and there is no objective basis for the pain Dyer reports; (4) based on credible *446 physiological observations and conclusions, Dyer’s pain and activity levels have not changed since December 7, 1990; (5) Dr. Asher provided no testimony that Dyer’s medical condition, pain, or physical limitation is now any different than it was on December 7, 1990.
Accordingly, because Dyer’s overall condition is the same now as it was at the time of Dyer I, then it must logically follow that Dyer is still able to perform the usual duties of his regular occupation. Dyer’s second claim for compensation under 85H must therefore be denied.
ORDER FOR JUDGMENT
For the foregoing reasons, it is hereby ORDERED that judgment enter for the defendants.

WhiIe acknowledging the medical opinion of the town’s examining physician regarding the plaintiffs physical capacity for light duty assignments at the Fire Department, the trial judge in Dyer / followed the correct standard of law as to the definition of “regular occupation” as it relates to a call firefighter, excluding public duties from his analysis.

Dyer v. Town of Lunenburg, Civil No. 89-1078 (Worcester Super.Ct., Dec. 7, 1990) (Donohue, J.).

See Memorandum of Decision on cross motions for summary judgment filed in this case on October 9, 2002, and docketed as paper no. 9 [reported sub nom Dyer v. Bilotta, 15 Mass. L. Rptr. 345).

Id.